ROBERT GOELET et al., Appellants, v. NATIONAL SURETY COMPANY, Respondent.

MARY R. GOELET, Appellant, v. NATIONAL SURETY COMPANY, Respondent.

(Argued October 19, 1928; decided November 20, 1928.)

*Edward F. Clark, Leonard J. Reynolds, Roger Hinds* and *Oscar B. Lowman* for appellants. The language of the bonds, especially in view of the conceded surrounding circumstances, must be construed as covering the loss of income from the restaurant property sustained by the plaintiffs. (*Utica City Nat. Bank* v. *Gunn,* 222 N. Y. 204; *Richardson* v. *County of Steuben,* 226 N. Y. 13; *Ulster Co. Savings Inst.* v. *Young,* 161 N. Y. 23; *U. S. Rubber Co.* v. *Silverstein,* 229 N. Y. 168; *Comey* v. *United Surety Co.,* 217 N. Y. 268; *St. Johns College* v. *Ætna Indemnity Co.,* 201 N. Y. 335; *Town of Whitestone* v. *Title Guaranty & S. Co.,* 72 Misc. Rep. 498; 148 App. Div. 900; 209 N. Y. 512; *American Surety Co.* v. *Pauly,* 170 U. S. 133; *Underwood* v. *Globe Indemnity Co.,* 245 N. Y. 111.) The defendant was estopped by its acquiescence in plaintiffs' repeated notices to the effect that they would suffer loss and damage if the restaurant was padlocked and hold the defendant responsible therefor to deny that its bonds covered such loss and damage. The trial court erred in overlooking and disregarding the plaintiff's damages consequent upon the loss of their right to relet the premises. (*Smith* v. *Mollison,* 148 N. Y. 241; *Stogop Realty Co., Inc.,* v. *National Surety Co.,* 216 App. Div. 198; *Watson* v. *Muskegon Steamship Corporation,* 208 App. Div. 158; *American Surety Company*

v. *Thurber*, 56 N. Y. Super. Ct. 338; 121 N. Y. 655; *Southern Pacific Co.* v. *Globe Indemnity Co.*, 21 Fed. Rep. [2d] 288; *People's Gas & Elec. Co.* v. *State of New York*, 189 App. Div. 421; 231 N. Y. 520; *Hamilton* v. *McPherson*, 28 N. Y. 72; *Milage* v. *Woodward*, 186 N. Y. 252; *Strong* v. *American Fence Const. Co.*, 245 N. Y. 48.)

*Bertram L. Marks* and *Samuel D. Cohen* for respondent. The bonds sued upon were not bonds guaranteeing the payment of rent. They were given for the purpose of guaranteeing the landlords against payment of any fines or counsel fees which the landlords were compelled to pay by reason of the violation of the National Prohibition Act. (*Francis* v. *Ferguson*, 246 N. Y. 516; *Kean* v. *National Surety Co.*, 241 N. Y. 258; *Maine Lumber Co., Ltd.*, v. *Maryland Casualty Co.*, 216 App. Div. 35; 244 N. Y. 537; *Underwood* v. *Globe Indemnity Co.*, 245 N. Y. 111; *Manufacturers Nat. Bank of Troy* v. *United States Fidelity & Guaranty Co.*, 245 N. Y. 55; *DeCamp* v. *Bullard*, 159 N. Y. 450.) The general terms of the paragraph of the lease under which the bonds in suit were furnished are limited and narrowed by the special and specific provisions providing for rent insurance and by the other specific terms of the lease. (*Dady* v. *O'Rourke*, 172 N. Y. 447; *Holmes* v. *Hubbard*, 60 N. Y. 184; *First Nat. Bank* v. *Story*, 140 N. Y. Supp. 31; 222 N. Y. 562.)

CRANE, J. This appeal involves the construction of two certain bonds given by the National Surety Co., pursuant to the terms of two leases. The premises leased were 7 and 9 East Fifty-second street. Both leases and both bonds are alike, with the exception that in the one, Robert Goelet, individually, and Mary R. Goelet and others, as trustees under the last will and testament of Ogden Goelet, deceased, are the lessors, and Mary R. Goelet is the lessor in the other. Two judgments have

been entered, but as the appeals are consolidated, I will refer to the plaintiffs as the landlord or lessor. The tenant, or lessee, is the Eldar Restaurant Co., Inc. The lease of the premises is for ten years and four months, commencing on the 1st day of January, 1921, and ending the 30th day of April, 1931. The rent reserved is $8,000 a year till May 1, 1926, and $10,000 thereafter. The lessee also covenants to alter and improve the buildings at an expense of not less than $17,500. These alterations and improvements are to be such as are required to fit the premises for the transaction of the business of the lessee.

As the name of the defendant indicates, a high-class restaurant was to be conducted in the premises after the improvements were completed. Consequently, with a view, no doubt, to the temptation which the proprietor of such a place is under, to make profits by selling intoxicants to patrons, and the risks incurred from such a violation of the law, another clause was added to the lease to protect the landlord from the consequences of the tenant's illegal acts. Paragraph 18 of the lease says that the lessee agrees to indemnify and save harmless the lessor from all loss, damage or liability growing out of its failure or default " in the observance of and compliance with any and all laws, orders, ordinances and statutes of the United States, * * * prohibiting the sale of any beverage containing a higher percentage of alcohol than expressly authorized by controlling statutes." The lease then recites that simultaneously with its execution the lessee has caused to be executed and delivered to the lessor a bond of the National Surety Company conditioned for the payment of any such loss sustained by the lessor.

The National Surety Company executed the bond referred to in the lease and annually thereafter up to and including the year 1924.

The tenant failed to keep the covenants of its lease. It sold liquor in violation of the National Prohibition Act,

which resulted in proceedings being instituted against it, of which both the landlord and the National Surety Company had notice. On the 18th day of February, 1924, a decree was entered in the District Court for the Southern District of New York, enjoining the Eldar Restaurant Co., Inc., from selling, keeping or storing any liquor containing one-half of one per cent or more alcohol by volume in premises 7 and 9 East Fifty-second street. The decree further gave a warning to all parties in these words:

" That at any time during said period of one year the complainant on proof that there has been any violation of any of the terms of this decree or of the injunction hereby directed to issue or any violation of the National Prohibition Act upon said premises may apply to this Court on two days' notice to the attorneys for defendants for a summary modification of this decree and of the injunction hereby directed to issue so that said decree and injunction shall provide that the premises herein described be closed for a period of one year."

The lessee did not heed this warning, for on May 14, 1924, an amended decree was entered by the District Court, reading as follows:

" It is FURTHER ORDERED, ADJUDGED AND DECREED that the said restaurant or club, located as aforesaid, be not occupied or used for one year from May 14, 1924; and, subject to such instructions as may be given by the United States Attorney for the Southern District of New York, the United States Marshal for the Southern District of New York is directed forthwith to lock and seal all of the entrances and exits to and from the said restaurant or club and to prevent, for a period of one year from the date hereof, the occupation or use of the said premises for any purpose whatsoever."

This decree was carried out. The lessor's premises were locked up for a year. He could not rent them or lease them for restaurant purposes. The surety company

had notice of all these various steps and proceedings as well as the landlord and tenant.

These decrees of the United States court did not absolve the lessee from its covenants to pay rent. At the time of the proceedings, however, the tenant was hopelessly insolvent, and shortly thereafter went into bankruptcy. This financial condition, no doubt, accounted for its indifference to the consequences of selling liquor to patrons. Its financial loss was nothing in comparison with that which might fall and did fall upon the landlord. This conceded insolvency of the tenant made it useless for the landlord to sue it for the rent. A judgment would have no value. The landlord might have dispossessed the tenant, but it was virtually out under the decrees of the United States court which had closed the place for the year and by reason of the bankruptcy proceedings which shortly followed. The tenant was through, and any proceedings taken by the landlord to dispossess it or to collect the rent due under the lease would have been mere waste of time and money. The law looks to the facts and seldom requires empty formalities for the establishment of rights, in the absence of statutory requirements. And the facts here are that the lessee violated its covenant to obey the Prohibition Law, in consequence of which the premises of the lessor were padlocked and empty for one year, during which time the actual loss to the lessor was the rental value of those premises.

Did the bond of the National Surety Company cover this loss? In making the lease and in giving the bond, all three parties had in mind the National Prohibition Act, its requirements and its penalties. Section 33 of that act among other things provides that any person who maintains a place to sell intoxicating liquor shall be guilty of a misdemeanor and shall be fined not more than $1,000 or imprisoned for not more than a year. A person who has knowledge that his house or building

is used for such purpose, and suffers the same to be so occupied and used, subjects the house or place to a lien to pay all fines and costs assessed against the person guilty of maintaining the nuisance. Section 34 provides for the remedy by injunction and contains the following:

" And upon judgment of the court ordering such nuisance to be abated, the court may order that the room, house, building, structure, boat, vehicle, or place shall not be occupied or used for one year thereafter; but the court may, in its discretion, permit it to be occupied or used if the owner, lessee, tenant, or occupant thereof shall give bond with sufficient surety, to be approved by the court making the order, in the penal and liquidated sum of not less than $500 nor more than $1,000, payable to the United States, and conditioned that intoxicating liquor will not thereafter be manufactured."

The utmost that could happen to the landlord under section 33, would be a lien upon his premises for $1,000 and costs. A bond in the sum of $10,000 would not have been required to cover so small a liability. The bond required by the lease was to be in the sum of $10,000, and this was the amount of the yearly bonds. The parties must have had section 34 in mind as well as section 33 — all the consequences which might result in loss by a violation of the National Prohibition Act. Such a loss under section 34 of the act would arise from the padlocking of the premises. Neither the landlord nor the tenant could use the premises for a year. If financially responsible, the loss would fall upon the tenant; if insolvent, the loss would fall upon the landlord. The loss in this case has concededly fallen upon the landlord, and, therefore, comes within the promise and undertaking of the surety company. Its bond reads:

" Now, Therefore, the Condition of this Obligation is Such, that if the Principal and Lessee shall pay to the said Obligee and Lessor such loss as she may sustain, not exceeding however, the sum of Ten Thousand

($10,000) Dollars, by reason of any failure or default by or on behalf of the Principal and Lessee or any person acting for or under the Principal or Lessee in the observance of or compliance with any and all laws, ordinances and statutes of the United States, or the State of New York, and of the City of New York, or any of its subdivisions or departments, prohibiting the sale of any beverage containing a higher percentage of alcohol than expressly authorized by controlling statutes, then this obligation to be void, otherwise to be and remain in full force and effect."

No explanation has been given why this bond should cover fines and costs under section 33 of the act, and not loss occasioned under section 34 of the act. The obligation is to pay the lessor such loss as he may sustain by reason of the lessee's violation of the United States statute.

The court below directed a verdict for the plaintiff for $250 and interest, the amount of counsel fee, on the theory that this bond or undertaking covered the expenses of the landlord in the District Court proceedings and nothing more. The court said that the bond was not a bond for the payment of rent. This is so. If after the injunction decree, the tenant had become insolvent and unable to pay the rent, the lessor could not have recovered it from the surety company. The bond did not cover the non-payment of rent. Loss of rent was not one of the penalties of the Prohibition Act, nor one of the consequences of its injunction decree within the contemplation of law. The padlocking decree, however, operated directly upon the lessor; it closed his property for a year; it spoke to him forbidding the leasing of his property to anybody. This was a loss to him as a direct consequence of the decree unless he could collect the rentable value from the lessee. Being insolvent, the lessee could not pay. The loss is substantial, not imaginary. This loss the National Surety Company by its bond undertook to pay.

The suggestion is made in the briefs that the landlord might have applied to the District Court for a modification of the decree and for the permission to use the premises for other purposes, or upon giving a bond. We must take the decree as it is. The court had this discretion at the time of the hearing in May of 1924; all the parties had notice of the application for the padlocking order. The judge failed to exercise any such discretion, but entered a decree for a year's suspension of user. The National Surety Company had notice of these proceedings as well as the landlord and apparently took no action in the matter. We, therefore, cannot speculate at the lessor's expense and for the benefit of the National Sure y Company as to what the Federal court might or might not have done on any subsequent application. These bonds must be given a fair and reasonable interpretation to cover the situation and circumstances which the parties intended. As we have had occasion to say before, these bonds are ordinary contracts and to be construed as such. (*Marcus* v. *United States Casualty Co.,* !9 N. Y. 21.)

The clause in the lease referring to rent insurance applies only to the loss of rent due to destruction by fire, and has so been acted upon by the parties.

The damage which the landlord has sustained in this case does not necessarily mean the rent reserved in the lease; it means the rental value of the premises for the year in question, what they would have been worth in the market if the lessor had been free and able to rent them. The rent reserved may be some evidence of that value. (*De Camp* v. *Bullard,* 159 N. Y. 450.)

The judgments of the Appellate Division and those of the Trial Term should be reversed and a new trial granted, with costs to abide the event.

CARDOZO, Ch. J., POUND, LEHMAN, KELLOGG and O'BRIEN, JJ., concur; ANDREWS, J., dissents.

Judgments reversed, etc.