# SOUTHERN SURETY CO. et al. v. MOTLOW.

## No. 5983.

Circuit Court of Appeals, Sixth Circuit.

Oct. 10, 1932.

Charles A. Houts, of St. Louis, Mo., for appellants.

P. H. Cullen, of St. Louis, Mo., and Seth M. Walker, of Nashville, Tenn. (Roy Parkes, and Wm. Waller, of Nashville, Tenn., on the brief), for appellee.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

### MOORMAN, Circuit Judge.

The appellee was the owner of a distilling plant in St. Louis, Mo. He was also the owner of practically all of the capital stock of the Jack Daniel Distilling Company, which had the plant under lease. In June of 1923 he sold the stock of the distilling company to George Remus and his associates. At the same time he canceled the existing lease on the plant and executed a new one with the company under its new ownership. This lease ran for one year with options for nine successive renewals for a like period. The stipulated rental was $500 per month. The assets of the distilling company consisted of 893 barrels of whisky which were stored in a warehouse on the leased property, and contemporaneously with the execution of the new lease the company executed to appellee a bond in the sum of $90,000, with the appellant as surety, to indemnify him against any loss or damage that he might suffer from any seizure or forfeiture of the property by the government for violation by the company of any internal revenue law of the United States. The lessee took possession of the property about July 1, 1923. Between that date and the middle of the following September the whisky in the warehouse was illegally removed without payment of the government tax. Upon discovery of the fraud, the government, on January 16, 1924, seized the property under forfeiture proceedings. Appellee and appellant joined in resisting the proceeding, but a decree of forfeiture was entered in the District Court September 19, 1928. Theretofore, however, the government had entered into a stipulation with the appellee which provided that if such decree were entered it could be satisfied and the property released upon the payment by the appellee to the government of $20,000. This stipulation was incorporated into the decree, pursuant to which the money was paid and the property turned back to appellee in December of 1928. Thereafter an appeal was taken by the appellee to the Circuit Court of Appeals, and upon an affirmance of the decree by that court [Motlow v. United States, 35 F.(2d) 90] this action was brought to recover on the bond. Upon the trial of the case there was a verdict for the appellee for $90,000, with interest from the date of the filing of the suit, plus a penalty on the principal of 10 per cent., or $9,000, and the further sum of $10,000 for attorney's fees. From a judgment rendered on this verdict the surety appeals.

It is contended that the lower court erred in permitting the jury to award the appellee damages measured by the rental value of the property while it was in the possession of the government. The position of appellant is that upon the commission of the wrongful acts by the lessee the property was forfeited to the United States, the forfeiture taking effect immediately, and that the measure of appellee's damages was the value of the property as of the date of the unlawful acts. The difficulty that confronts appellant in urging this point is that it neither presented that theory to the court below nor objected to the appellee's theory of damages measured by rental values. Since, however, the question may be raised on the retrial which must be had, we deem it advisable to set forth our views thereon.

The right to the property vested in the United States upon the commission of

the acts warranting the forfeiture, but the title was not perfected until the decree of condemnation was entered, which, when entered, related back to and took effect as of the date of such acts. United States v. Stowell, 133 U. S. 1, 16, 17, 19, 10 S. Ct. 244, 33 L. Ed. 555. Had the appellee been deprived of the use of the property temporarily, with the legal right always, at the expiration of such deprivation, to repossess it free of any claim of the government, there could be no question that the rental value, plus any damage done the property while it was in the possession of the government, would be the measure of liability. Goelet v. National Surety Co., 249 N. Y. 287, 164 N. E. 101, 62 A. L. R. 425; Hutchins v. Munn, 209 U. S. 246, 28 S. Ct. 504, 52 L. Ed. 776. On the other hand, had the government's case been so plain as not to warrant a contest of the proceeding, the appellee might well have refused to intervene and make defense, and when the decree of forfeiture was entered could have sued and recovered the value of the property as of the date to which the decree related. There was a question, though, as to whether the property was subject to forfeiture as against the appellee, and he, being under the duty to minimize his damages, undertook to defeat the proceeding. Had he succeeded in doing so promptly his damages would have been much less than the value of the property. Though not succeeding in doing so, he undoubtedly brought about the stipulation by which he was able to reacquire the property for less than its value as of the date of its seizure. The procedure that he adopted had the approval of appellant, if indeed it were not taken at appellant's direction. Having acted in good faith, with the result that he reacquired the property at a price below its value as of the date of the seizure, the measure of damages, in our view, is the amount he expended in reacquiring it, plus its rental value during the time he was deprived of its use, with such further sums as will recompense him for the expenses he incurred in the litigation and for any damage done the property beyond ordinary wear and tear while it was in the possession of the government, the total not to exceed its value as of the date of the seizure.

The second contention of the appellant is that the bond undertook to protect the appellee only from losses resulting from the seizure of the warehouse and did not cover losses resulting from the seizure of other buildings located in the rear of the warehouse. This contention must be denied. The obligation was to indemnify against all costs, expenses, damages, and losses resulting from the seizure or forfeiture of "said building or any part thereof." All of the buildings were located on a single lot and were used in connection with one industry. It was not practicable to seize part of the property and not all of it, nor was it possible for appellee to use or rent the cattle pen and rear of the premises while the government was holding the warehouse, bottling room, office and file rooms. If, therefore, the government had seized only the warehouse and other rooms specifically covered by the bond, this would have prevented the appellee from using all other parts of the property. But whether so or not, there was a seizure of the entire lot as required by 26 U. S. C., § 306 (26 USCA § 306), and the bond must be deemed to have been executed to indemnify appellee against any loss or damage resulting from any forfeiture authorized by this statute.

It was conceded at the trial that there could be no recovery for loss of the use of the property to the extent that appellee unnecessarily postponed the hearing and decision in the forfeiture case. The appellee was asked upon cross-examination if there were indictments for violating the national prohibition laws pending against him in St. Louis and Indianapolis at the time the forfeiture proceeding was instituted, and if the failure to try that proceeding was not due to the pendency of these indictments. The purpose of this interrogation was to show that the appellee was not willing to leave Tennessee while these indictments were pending, and therefore procured or acquiesced in continuances of the forfeiture proceeding. We think the question was legitimate, but we are also of opinion that it was only fair to the appellee to permit him to show, as he did finally show, that there were verdicts of not guilty against him in both of these cases. Counsel for appellee, however, were not satisfied with merely showing those facts, but upon re-direct examination inquired in detail into certain proceedings instituted before a commissioner and the district judge in Tennessee to remove appellee to the jurisdiction of these courts for trial. At the beginning of these inquiries counsel for appellant objected and stated that his purpose in inquiring about the indictments was to show that the continuance of the forfeiture proceeding was at the instance or with the consent of the appellee, that he was not trying to reflect on the appellee's credibility as a witness but

had a very high regard for him, and that he had referred to the indictments "simply to show the circumstances under which this case was continued at St. Louis from time to time." Notwithstanding this avowal in the presence of the jury, the witness was permitted to state that he testified before the commissioner and explained truthfully and honestly his whole connection with the disappearance of the whisky at St. Louis, that other witnesses were called and testified, that the commissioner denied the application of the government to remove him "upon the ground that there was no evidence tending to show" that he was "guilty of anything," that counsel for appellant had a book lying on the table in front of him while cross-examining the witness, it being the Federal Reporter having in it the opinion of the district judge in the removal proceeding, that upon the refusal of the commissioner to order the appellee's removal the government made application for such an order to the district judge, that at the hearing of that application a special assistant attorney general was present, that the United States District Attorney from Indianapolis was also present, that Remus testified for the government on that hearing, and that after a full hearing the judge denied the government's application upon the ground "that there was not a scintilla of evidence to show" that he (appellee) was "guilty of anything."

All of the above evidence was objected to and none of it should have been admitted, except the statements that there were acquittals under both indictments. Proof of the indictments was not admissible in evidence to discredit or impeach the appellee. Glover v. United States (C. C. A.) 147 F. 426, 429, 430, 8 Ann. Cas. 1184; Massenberg v. United States (C. C. A.) 19 F.(2d) 62, 64. It was not offered for that purpose, but as tending to show that he had procured continuances of the forfeiture case and to that extent was responsible for the continued holding of the property by the government. There was a basis for this inference in the admission of appellee that he did not wish to leave Tennessee while the indictments were pending, and appellant could not be deprived of the benefits of this inference touching an important issue in the case merely because the facts from which it could be drawn might also have the effect of discrediting the appellee. To guard against the latter effect the court might have charged the jury at once that it was not to be considered as affecting the credibility of the appellee as a witness and also permitted him

to state, as we have said, that the indictments were dismissed or that he was acquitted. Further than that the matter should not have been gone into, certainly it was error to receive in evidence proof of the rulings and circumstances surrounding the hearings on the removal proceedings.

The contract of indemnity was made in St. Louis. A statute of Missouri (section 5929, Revised Statutes Missouri 1929 [Mo. St. Ann. § 5929]) provides that in an action against an insurance or indemnity company, if it appear that the company "has vexatiously refused" to pay the loss, the court or jury may allow the plaintiff, in addition to the loss, 10 per cent. on the amount thereof, with a reasonable attorney's fee. Shortly after the seizure of the property, Levy, a representative of appellant in St. Louis, threatened to have appellee indicted for conspiring with Remus and his associates to violate the national prohibition laws if appellee did not settle the liability on the bond for half its face value. This statement was received in evidence as proof of vexatious refusal to settle the loss. In view of the then status of the forfeiture proceeding and the inability of the parties to ascertain the extent of liability on the bond, we do not think it was relevant upon that point. The court nevertheless submitted the question of vexatious refusal to the jury, and in arguing it counsel for appellee stated that Motlow went to St. Louis "time and again to get a trial" of the forfeiture case, and was unable to do so. Then counsel stated: "I don't mean to intimate that the Southern Surety Company had anything to do with that. He couldn't get a trial. The Government said that we won't try the libel suit until this other one is over. But I do call your attention to this fact, that this conference occurred in September of 1925, and that in October, and within less than thirty days, Lem Motlow was indicted in Indianapolis, when this crime, if committed, was committed in Missouri. I do call your attention to that fact." Again other counsel for appellee said: "You have noticed, and I think it is a fair inference from the testimony, that twice this man has been wrongfully indicted and twice has this jurisdiction and twice has the— once has the jurisdiction of Missouri and once has the jurisdiction of Indianapolis declared that he was wrongfully indicted. Whether that indictment was the result of the threat made by Levy, who comes not before you, I will leave it for you to say." There were also other objectionable statements made in argu-

ment. One was that the appellee "has been pouring insurance premiums to this company" for years; and another: "To get to a man that you owe, or may owe, $90,000 to, to go to that man, who has led a blameless and spotless life, and say to him, 'if you don't cut this thing in half, I will send you to the penitentiary.' Think of it! That is the treatment that a surety in this case has extended to the man insured. That is the same kind of treatment that an insurance company, if it is permitted in this case, will be permitted to hand out to you in case you have a loss of $10,000 and comes to you and says: 'Unless you cut it half in two we will brand you as a criminal and send you to the penitentiary.' "

There would have been no justification for some of these statements even had there been substantial evidence of a vexatious refusal to settle the claim. It is true that counsel withdrew the statements upon objections being made to them, but that circumstance, in our opinion, did not cure the error. The question is one of error influencing the verdict, and although the sustaining of an objection to an improper argument or the withdrawal of it will generally be deemed to have cured the error [Carter v. State of Tennessee, 18 F.(2d) 850, 853 (6 C. C. A.); Pace v. United States, 27 F.(2d) 519 (6 C. C. A.)], where, upon a consideration of the whole case, it appears that the minds of the jury were likely affected by the argument despite the withdrawal of it by counsel or its exclusion by the court, the prejudice remains, and a new trial must be ordered. Volkmor v. United States, 13 F.(2d) 594 (6 C. C. A.), and authorities. Indeed, where the argument is manifestly prejudicial, the court of its own motion should intervene and protect the suitor. N. Y. Central R. R. Co. v. Johnson, 279 U. S. 310, 318, 49 S. Ct. 300, 73 L. Ed. 706. Whether it was the duty of the court to do so in this case is a question that is not presented, for due objections were made. After the withdrawal, upon appellant's objection, of a part of the improper argument referred to, other statements of similar import were made which, on objection thereto, counsel felt it necessary also to withdraw. We cannot think that in these circumstances the errors were cured.

Finally we are of opinion that the court erred in permitting the jury to include in its award a penalty in the form of damages and an attorney's fee. Assuming that the Missouri statute was a part of the contract and is enforceable in a proceeding instituted in a United States District Court in another state, it must nevertheless be accepted that before a recovery can be had thereunder there must be substantial evidence of a vexatious refusal to pay the loss. Whether there is such evidence is a question to be determined by the court of the trial forum. Under statutes of this kind, an insurance company has the right to refuse to pay a claim so long as it has reasonable grounds to believe that it has a meritorious defense. State ex rel. v. Allen, 303 Mo. 608, 621, 262 S.W. 43; Columbian Nat. Life Ins. Co. v. Harrison, 12 F.(2d) 986, 990 (6 C. C. A.); Commercial Union Fire Ins. Co. v. Marshall, 18 F.(2d) 457, 459, 460 (6 C. C. A.); Globe Indemnity Co. v. Union & Planters' Bank & Trust Co., 27 F.(2d) 496, 501 (6 C. C. A.). It likewise has the right to contest the amount of the loss if it has reason to believe that the demands of the claimant are exorbitant. Considering these rights which the appellant had, we are of opinion that there was not sufficient evidence of a vexatious refusal to pay to submit that question to the jury. The appellant offered to settle for $20,000, the amount appellee paid to reacquire the property. Appellee never demanded or offered to accept any specific sum except the full amount of the bond. On the evidence adduced at the trial the appellant was justified in refusing to settle on that basis. The proofs as to the rental value were not satisfactory. The property was leased to the distilling company at $500 a month. There was evidence to indicate that the delay in bringing the forfeiture suit to trial was due as much to the appellee as to the government. In view of these facts and especially the fact that no offer was made to settle for less than the face of the bond, we think it cannot be said that the appellant was guilty of vexatiously refusing to pay the loss. The threat made by Levy, which occurred before the liability of the appellant was or could be determined, is not, in our opinion, evidence of such refusal.

The judgment is reversed, and the cause remanded for a new trial.