**BONFILS et al. v. LEDOUX et al. (two cases).**

**LEDOUX et al. v. BONFILS et al.**

(Circuit Court of Appeals, Eighth Circuit. May 22, 1920.)

Nos. 5439, 5440, 5444.

1. **Landlord and tenant** ☞108(1)—**Equity has jurisdiction to relieve tenant from forfeiture for nonpayment of rent.**

   Equity has jurisdiction of a suit to relieve a tenant from forfeiture of his estate because of failure to pay the rent reserved at the time required by the terms of his lease.

2. **Landlord and tenant** ☞108(1)—**Demand unnecessary to forfeit for nonpayment of rent, where lease so provides.**

   Where a lease expressly so provides, no demand is necessary to sustain a forfeiture by lessor for nonpayment of rent.

3. **Landlord and tenant** ☞108(1)—**Lessee willfully in default not entitled to relief from forfeiture.**

   The lessee of a theater, who without fault of the lessor did not take possession at the beginning of the term, nor demand possession for more than seven months, during which time lessor had declared a forfeiture under the terms of the lease for nonpayment of rent, and had leased to another, who had made extensive improvements, *held* not entitled to be relieved in equity from the forfeiture.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4. Landlord and tenant ⊜⇒108(1)—Tender by tenant of rent due condition precedent to relief from forfeiture.**

To entitle a lessee to relief in equity from a forfeiture of the lease for nonpayment of rent, the rent due must be paid or tendered.

**5. Landlord and tenant ⊜⇒213(5)—Rent paid in advance under terms of lease not recoverable.**

The lessee of a theater, who, as required by the terms of the lease, paid ten weeks' rental in advance, but did not take possession, nor demand possession, until long after the ten weeks had expired, and the lease had been forfeited for nonpayment of rent, *held* not entitled to recover the rent so paid in advance.

**6. Landlord and tenant ⊜⇒128(1)—Lessor occupying with consent of lessee liable for use and occupation.**

Where, after commencement of the term of the lease of a theater, pursuant to a common understanding, lessor remained in possession and operated the theater during the time for which lessee had paid rent in advance, lessee *held* entitled to recover the reasonable value of such use and occupation during such time.

Appeal from the District Court of the United States for the District of Colorado; Robert E. Lewis, Judge.

Suit in equity by Wilfrid Ledoux and others against Frederick G. Bonfils and another. Heard on cross-appeals from the decree. Affirmed on complainants' appeal; reversed and remanded for further proceedings on appeal by defendants.

Appeals and cross-appeal challenge the decree of the trial court. The bill sought to have the defendants held to be trustees of the lease of a theater building. This theater building, known as the Empress Theater, in Denver, was held under a lease by the defendant Greaves, as lessee. Although he was the title holder, the defendant Bonfils and one Tammen, who is not a party to the suit, were co-owners each having a third interest in the lease. Greaves was managing the building and conducting a theater therein in the fall of 1915. On October 9, Greaves executed a written lease of the building to the plaintiffs, who were experienced managers of theaters. The term was to begin on November 1, and to continue about five years, and the rental fixed was $500 per week, payable in advance on the first day of each week. No rent was to be paid for the period from November 1 to November 15. The plaintiffs paid $5,000 of the rental in cash at the time of the execution of the lease, to cover the first 10 weeks of their term, beginning November 15, 1915, and ending January 24, 1916. Among the covenants of the lease were the following:

"It is further expressly understood and agreed by and between the parties hereto that if the rent herein reserved, or any part thereof, stipulated herein to be paid by the said lessees, shall be behind or remain unpaid for 5 (five) days from and after the day and date whereon the same ought to have been paid, or if the said lessees shall fail or make default in the performance of any one or more of the covenants or promises herein set forth to be by said lessee kept and performed, the same and each and every instance thereof shall work a forfeiture of this lease, and upon the occurrence of any one default it shall and may be lawful for the said lessor, its assigns, agent, or attorney, at its or their election, to declare said term ended and into the said premises or any part thereof, either with or without process of law, to re-enter and the said lessee, or any person or persons occupying in or upon the same, to expel, remove, and put out, using such force as may be necessary in so doing, and the said premises again to repossess and enjoy as in its first and former estate without first making any demand for said rent, either upon the premises or elsewhere, or giving any notice that said lease is forfeited, anything in the statutes of Colorado to the contrary notwithstanding.

"It is hereby agreed and understood between the parties hereto that the authority above given to re-enter and take possession of said premises in case

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of a forfeiture of the lease as above provided is a license in law to the lessor and its agent to so enter and take possession of said premises, and no action of forcible entry, unlawful detainer, trespass, or like action shall be brought by the lessee, in case said lessee is forcibly dispossessed from said premises by reason of the forfeiture of this lease as aforesaid."

The plaintiffs never took possession, and did not pay any rent after the first payment of $5,000. Greaves continued in possession, and on February 17, 1916, assigned the lease held by him as lessee to a corporation known as the Empress Theater Company, which had been organized on January 26, 1916, and in which Bonfils, Greaves, and Tammen were the principal stockholders. That corporation thereafter conducted a theater in the building. The plaintiffs and Bonfils had some extended negotiations looking to the acquirement of another theater in Kansas City, Mo., also known as the Empress Theater. The plaintiffs claimed in their bill, and there was proof tending to show, that shortly before the term of the Denver lease began Bonfils stated to the plaintiff that he was about to get possession of the Kansas City theater and that there was an urgent necessity for the plaintiffs to go there, as some one was needed to take and hold possession of that theater because of some legal complications, and that he depended upon the plaintiffs to do that work; that, in reply to plaintiffs' expostulations that it was necessary for them to take possession of the Denver theater, Bonfils stated that they need not worry about that theater, because he would have Greaves continue to operate it until the plaintiffs came back from Kansas City and were ready to take possession. The plaintiffs claimed that, relying on their statements, they agreed to go to Kansas City, and there entered into a lease of that theater also from a lessor who held the title in trust for Bonfils and Tammen. They took possession of the Kansas City theater and operated it for several months. It proved a losing venture, and the plaintiffs organized a corporation, in which they were the chief stockholders, and to which they assigned the lease. This company continued operations for some months, and then became a bankrupt. The plaintiffs conducted a theater at Omaha, and were interested in similar enterprises elsewhere. Greaves notified the plaintiffs, about the time when his lease required him to deliver possession, that he did not wish to operate the Denver theater longer and asked them to take possession. Thereupon the plaintiffs again consulted Bonfils, and plaintiffs assert that Bonfils, in the hearing of Greaves, again stated that Greaves would continue to operate the Denver theater, and that the plaintiffs could return to Denver after they were through at Kansas City; that they need not worry about Denver, as he would look after their interests there. The plaintiffs also claim that Bonfils again made statements to the same effect about November 13, when they assured him that their affairs in Kansas City were such that they could then go to Denver. The plaintiffs claimed that in March, 1916, they again inquired of Bonfils about their taking possession of the Denver theater, but that he informed them that he would not permit them to have possession, because they had forfeited their lease. About the middle of June, 1916, the plaintiffs demanded possession of the Denver theater from Bonfils and Greaves, but were notified that their leasehold rights had been forfeited. Based on this assumed state of facts, plaintiffs' bill prayed that the defendants be decreed to be trustees for plaintiffs in the operation of the Denver theater and required to account, and that possession of the theater should be surrendered to them.

The claim of the defendants was that no such statements as those relied upon by the plaintiffs had been made to them by either Bonfils or Greaves, and their evidence supported this denial. They also claimed that early in December, 1915, the plaintiffs had abandoned and surrendered the lease of the Denver property, and that they had accepted the surrender, and after the assignment of Greaves' lease to the new corporation, it was shown that that company had expended $14,000 in making alterations and improvements in the theater building, removing the storerooms, building a lobby, inside foyer, and a new box office, and in refurnishing and redecorating, before the plaintiffs made demand in June for possession. The plaintiffs' testimony denied that any surrender or abandonment had been made. Other defenses were asserted in the answers, and the defendants prayed that the rights of the

defendants Bonfils and Greaves to the $5,000 paid by plaintiffs be determined, and for general equitable relief. The decree dismissed the bill as to the Empress Theater Company, and gave judgment in favor of the plaintiffs against Bonnls and Greaves for the $5,000, which plaintiffs had paid them, with interest and costs. The court expressed the opinion that the plaintiffs had not proved the statements they had alleged Bonfils to have made, and that no trust was established. The recovery of the $5,000 and interest was allowed, because defendants had rendered nothing of value to the plaintiffs in return therefor, and because possession was not taken by the plaintiffs. The defendants have filed two appeals on a single record, but the later one must be regarded as in substitution for the earlier.

John T. Bottom, of Denver, Colo. (John M. Waldron, of Denver, Colo., on the brief), for Bonfils and others.

Anan Raymond, of Omaha, Neb. (T. J. O'Donnell, of Denver, Colo., Brogan, Ellick & Raymond, of Omaha, Neb., and John W. Graham, of Denver, .Colo., on the brief), for Ledoux and others.

Before HOOK and STONE, Circuit Judges, and MUNGER, District Judge.

MUNGER, District Judge (after stating the facts as above). The plaintiffs, in support of a cross-appeal, urge that the evidence shows that there was a constructive trust established, whereby the defendants held the property in trust for the plaintiffs, while the defendants urge that the plaintiffs' evidence shows nothing more than an express trust concerning lands and relating thereto, and that such a trust is invalid under the Colorado statute of frauds (section 2660, Rev. Stats. of Colo. 1908), which forbids the creation or declaration of such a trust otherwise than by deed or conveyance in writing, subscribed by the party or by his agent authorized by writing. It is not necessary to determine this issue, because the court below decided on conflicting evidence that no such agreement as the plaintiffs rely upon had been made. That conclusion is supported by direct evidence and by many circumstances in the case, and should not be set aside.

[1] The defendants assert that the court should have dismissed the plaintiffs' bill, because, when it turned out that the equitable relief sought by the bill, the declaration of a trust, could not be granted, the court was without jurisdiction to proceed further, leaving the parties to their actions at law for further relief sought. The correctness of this conclusion may be conceded, if the bill had sought only the establishment of a trust relationship; but the bill also proceeded upon a familiar ground of equitable jurisdiction for relief from a forfeiture asserted by the defendants. A court of equity has power to relieve a tenant from forfeiture of his estate, because of a failure to pay the rent reserved at the time required by the terms of his lease, when it is just to do so. Sheets v. Selden, 7 Wall. 416, 19 L. Ed. 166; Kann v. King, 204 U. S. 43, 27 Sup. Ct. 213, 51 L. Ed. 360; The "Elevator Case" (C. C.) 17 Fed. 200; 1 Pom. Eq. Jur. §§ 433, 434, 450, 453.

[2] When the conclusion of the lower court is accepted that there was no agreement on the part of the defendants to hold the Denver theater as trustees for the plaintiffs until they should be ready to assume possession of it, we have the fact remaining that the plaintiffs did not take possession of the leased property, but allowed the

lessor to remain in possession for 7½ months before demanding possession. The lessor did not refuse or withhold possession. Finding no one claiming possession on the part of the lessees, he continued to use and occupy the premises, conducting a theater as he had done before the execution of the lease. After the 10 weeks' period had expired for which plaintiffs had paid the rent in advance, and when more than 3 weeks had elapsed thereafter without payment of the rent reserved by the terms of the lease, the lessor assigned his interest to a corporation as a new tenant, and thereafter insisted that the plaintiffs had forfeited their estate. Under the terms of the lease, as they have been quoted, no demand was necessary as a foundation for a legal forfeiture. Lewis v. Hughes, 12 Colo. 208, 20 Pac. 621; Fifty Associates v. Howland, 5 Cush. (Mass.) 214; 24 Cyc. 1355; 16 R. C. L. 1128.

[3, 4] We perceive no equitable grounds for relief from the forfeiture which the defendants have declared. The default in the payment of the rent must be taken to be willful. The rent due amounted to the sum of $9,500 before possession was demanded of the lessor. A valuable business property was left without attempt at occupation by the tenants, when a large portion of its leasehold value consisted in the uninterrupted continuance of its use as a theater; the new lessee was allowed to expend $14,000 in making substantial alterations and improvements of the building, under circumstances that imparted knowledge to the plaintiffs, and without objection on their part, and, when possession was demanded, no tender or offer to pay the rent due was made. In the case of Sheets v. Selden, supra, the court said, in refusing equitable relief from a forfeiture declared against a tenant:

"Courts of equity are governed by the same rules in the exercise of this jurisdiction as courts of law. All arrears of rent, interest, and costs must be paid or tendered."

And in the case of Kann v. King, supra, the same court said:

"In considering this subject two propositions are obvious: First, where the forfeiture from which relief is sought has been occasioned by the gross negligence of the person claiming to be relieved, the default so occasioned is not one brought about by accident or mistake; and, second, that even where accident or mistake has been shown, especially in the absence of culpability or fraud on the part of the other party, a court of equity will not grant relief from the forfeiture, unless it can be done with justice to that party."

For these reasons the cross-appeal must fall.

[5] The defendants insist that there is no basis for allowing a recovery from the defendants of the $5,000 paid by the plaintiffs in advance as rental from November 15 to January 24, because it was paid according to their express covenant in the lease. It is the general rule that the failure of the lessee to take possession is no defense to a claim for rent, because that liability is fixed, not by the fact of possession, but by the covenant to pay rent. Oregonian Ry. Co. v. Oregon Ry. & Nav. Co. (C. C.) 27 Fed. 277; Moore v. Dove, Fed. Cas. No. 9757; Union Pac. Ry. Co. v. Chicago, R. I. & P. Ry. Co., 164 Ill. 88, 45 N. E. 488; Tiffany on Landlord & Tenant, 1154; Taylor on Landlord & Tenant, § 15.

The mere fact that the lessor remains in possession after the term of the lease has begun does not involve any exclusion from the premises, in the absence of any request for possession by the lessee. If the tenant desires to occupy the premises, he should manifest that intention in a decisive way. Millie Co. v. Thalmann, 34 App. Div. 281, 54 N. Y. Supp. 276; Vanderpool v. Smith, 4 Abb. Dec. (N. Y.) 461; Fitzhugh v. Baird, 134 Cal. 570, 66 Pac. 723; Little v. Hudgins, 117 Ark. 272, 174 S. W. 520. The continued occupation by the lessor awaiting the tenant's entry often is a protection to the interests of both against possible injury of the building by fire, by trespass, by lapse of insurance, or by deterioration. So long as such possession by the lessor is permissive, or not adverse to the lessee, it cannot amount to an eviction or termination of the lease, or excuse the tenant from payment of rent according to his contract, nor can it be a basis for recovery from the lessor of rent that has already been advanced. The portion of the decree awarding a judgment against the defendants for the recovery of the rent paid must therefore be reversed.

[6] As the parties are in a court of equity, and as the defendants Bonfils and Greaves ask affirmative relief in having determined the rights of those defendants to the $5,000 paid by the lessees, we think that the denial of relief from the forfeiture of the lease should be coupled with a determination of the rights of the parties before the court arising from the payment of this sum, and the occupation of the leased premises by the lessor during the term in which the lease was in full effect, in order that the whole controversy between the parties may be settled.

It is evident that the trial court found that there was no abandonment or surrender of the leased premises in December, as claimed by the defendants, because the decree for the restoration of the $5,000 presupposes that the lessees were entitled to a possession under their lease for the full term of the ten weeks ending January 24. We may accept this conclusion, also, as the testimony was in direct conflict. What was, then, the legal effect of the continued possession by the lessor with the acquiescence of the lessees? The law implies a promise by the occupier, who has entered and occupied the premises by permission of the owner, and without any express contract to pay the owner a reasonable rent for his occupation. Carpenter v. United States, 17 Wall. 489, 21 L. Ed. 680; Lazarus v. Phelps, 152 U. S. 81, 14 Sup. Ct. 477, 38 L. Ed. 363; United States v. Whipple Hardware Co. (C. C. A.) 191 Fed. 945; Cobb v. Kidd (C. C.) 8 Fed. 695. The vendor may become liable to his vendee, or the lessor to his lessee, for use and occupation of the land conveyed, when he continues in possession after the time the grantee was entitled to possession. Preston v. Hawley, 139 N. Y. 296, 34 N. E. 906; Larrabee v. Lumbert, 34 Me. 79. Greaves and Bonfils each obtained a one-third portion of the beneficial use of the theater building during a period of 10 weeks, for which period the plaintiffs had paid the rent demanded by their lease, and this occupation was with the knowledge and consent of the plaintiffs. It was the opinion of the trial court that the failure of the lessees to take possession was with the knowledge and acquiescence of the

lessor, and the evidence sustained this conclusion. The plaintiffs are therefore entitled to recover from each of these two defendants one-third of the value of such use and occupation. The answer of the defendant Bonfils asserted a set-off as assignee of legal demands against the plaintiffs, but there was no evidence given to show that he was such assignee.

The decree will be affirmed as to the Empress Theater Company, and will be reversed as to the defendants Bonfils and Greaves, with directions to the trial court to allow proofs of the value of the use and occupation by Bonfils and Greaves, as has been indicated, and to enter a judgment for that sum against them, and to deny other relief prayed for by the parties other than the Empress Theater Company. The appellants will recover their costs in cases numbered 5439 and 5440, and no costs to be taxed in this court in favor of either of the parties in case numbered 5444.