UNITED SECURITY CORPORATION, Respondent, *v.* ISADORE SUCHMAN, Appellant.

Argued April 6, 1954; decided May 20, 1954.

*Paul R. Shaw* and *Henry G. Friedlander* for appellant. I. The uncontradicted evidence of payment is a complete defense to the petition as served. (*Metropolitan Life Ins. Co.* v. *Childs Co.,* 230 N. Y. 285; *Commonwealth Mtge. Co.* v. *De Waltoff,* 135 App. Div. 33.) II. The proposed amendment to plead the termination of the lease would destroy the right of this new owner to claim the existence of a landlord and tenant relationship with this occupant, there would be no liability to pay rent to the new owner and summary proceedings for nonpayment could not be maintained. III. After a lease is cut off by foreclosure there is no liability by the tenant for rent to the purchaser in the absence of an attornment or new agreement. (*Greene* v. *Geiger,* 46 App. Div. 210.) IV. The claim of an implied agreement is without foundation in fact or in law. (*Castle* v. *Armstead,* 168 App. Div. 466, 219 N. Y. 615; *Stern* v. *Equitable Trust Co.,* 238 N. Y. 267.) V. The judicial concept of statutory tenancy is irrelevant to this case. (*Zajic* v. *Sikora Realty Corp.,* 252 App. Div. 343; *Ellenbogen* v. *Caldwell,* 270 App. Div. 946.) VI. The nonpayment petition cannot be sustained by proof of holdover. VII. No final order being possible, it is improper to grant a money judgment. VIII. Petitioner has only partially pleaded and has totally failed to prove on trial compliance with the applicable rules and regulations in nonpayment cases, which were a condition precedent to the commencement of the proceeding.

*Roy Berlin, Milton Berelson* and *Peter C. Demetri* for respondent. I. The order of the Appellate Term granting permission to landlord to amend the petition was properly affirmed as a matter of law. (*Cerana Apts. Corps.* v. *Solomon,* 150 Misc. 906.) II. There was an irrevocable termination of the lease by the judgment of foreclosure and sale of the mortgaged premises. (*Prudence Co.* v. *160 W. 73d St. Corp.,* 260 N. Y. 205; *Metropolitan Life Ins. Co.* v. *Childs Co.,* 230 N. Y. 285.) III. In view of the emergency rent laws, the termination of the lease operated to create a statutory tenancy. (*Stern* v. *Equitable Trust Co.,* 238 N. Y. 267; *Harlem Sav. Bank* v. *Cooper,* 199 Misc. 1110; *Klipack* v. *Raymar Novelties,* 273 App. Div. 54; *Commonwealth Mtge. Co.* v. *De Waltoff,* 135 App. Div. 33; *Da Costa* v. *Hamilton Republican Club,* 187 Misc. 865.) IV. The remedy of summary proceedings is available to landlord. V. Landlord is entitled in the final order to a money judgment for all unpaid rent. VI. Appellant's objection that landlord failed to prove compliance with the applicable rules and regulations in nonpayment cases is irrelevant to the issues before this court and in any event is unsound.

Fuld, J. United Security Corporation foreclosed a mortgage on an apartment house located on Central Park West in New York City and became the owner of the premises by purchase at the foreclosure sale on July 25, 1949. It found Isadore Suchman in possession of one of the apartments in the building, although he had been named as a party defendant in the foreclosure action and his rights under a lease granted by the former owner had been barred by the judgment of foreclosure and sale. Suchman having refused to pay rent, United, describing itself as "landlord," brought this nonpayment summary proceeding — pursuant to subdivision 2 of section 1410 of the Civil Practice Act — to evict him and to obtain a personal judgment against him for rent allegedly in arrears, from August 1, 1949, to June 30, 1950, amounting to upwards of $3,000.[1]

1. Appellant defended his failure to pay rent to respondent upon the ground that he had already paid the rent; he claimed — and it does not appear to be disputed — that, when he moved into the apartment in 1948, he paid the then landlord three years' rent in advance.

The Municipal Court dismissed the petition, but, on appeal, the Appellate Term — by a divided vote — reversed and ordered a new trial upon the ground that appellant Suchman, by virtue of his continued occupancy after the foreclosure judgment and sale, became a statutory tenant, a status justifying the maintenance of a nonpayment summary proceeding by respondent. It was the view of the dissenting justice (EDER, J.) that the conventional relationship of landlord and tenant had been terminated by the foreclosure judgment and sale; that the emergency rent laws did not "abrogate" the rule "requiring landlord and tenant relationship to be shown in order to maintain summary proceedings"; and that United's only recourse was by application for an order in the nature of a writ of assistance to obtain possession. On further appeal, the Appellate Division — two justices dissenting "for the reasons assigned in the opinion of EDER, J." — affirmed and granted leave to appeal. A stipulation for order absolute having been filed by appellant, the appeal is properly here (306 N. Y. 858), the question presented being whether there is such a relationship between the parties as to entitle respondent to institute and prosecute a summary proceeding for nonpayment of rent.

We start with the proposition that the lease pursuant to which appellant had originally gone into possession came to an end with, and was terminated by, the judgment of foreclosure and the ensuing sale. In consequence, appellant no longer had any rights under the lease and, conversely, the new owner of the premises, the purchaser at the foreclosure sale, could not look to that lease agreement to hold appellant liable either for the payment of rent or for the performance of any other stipulated obligation. (See *Metropolitan Life Ins. Co.* v. *Childs Co.*, 230 N. Y. 285, 288–289.) And, prior to the enactment of the emergency housing legislation, if the tenant remained in possession without making any new agreement with the new owner, the latter had but one remedy, namely, a writ of assistance or — after 1942 when subdivision 6 was added to section 1411 of the Civil Practice Act — its substitute, a holdover summary proceeding. (See, e.g., *Commonwealth Mtge. Co.* v. *De Waltoff*, 135 App. Div. 33, 35.) Continued possession and occupancy on the part of the tenant were not of themselves sufficient to spell

out an agreement to pay rent or to create the traditional relationship of tenant and landlord. (See *Castle* v. *Armstead,* 168 App. Div. 466, 468–469, affd. 219 N. Y. 615.)

Clearly, then — and both the Appellate Term and the Appellate Division recognized it — the result reached below would not have obtained in the absence of the State Residential Rent Law (L. 1946, ch. 274, as amd.), and there is nothing in that enactment, either in letter or spirit, which furnishes support for the order under review.

No provision of the housing legislation purports to clothe with the status of tenant an occupant — made a defendant in the foreclosure action — who, though continuing in possession after the foreclosure sale, fails or refuses to pay rent. Subdivision 7 of section 2 defines " tenant " as " tenant, subtenant, lessee, sublessee, or other person *entitled to the possession* or to the use or occupancy of any accommodation." (Emphasis supplied.) And subdivision 1 of section 5 declares that " *So long as the tenant continues to pay the rent to which the landlord is entitled,* no tenant shall be removed from any housing accommodation with respect to which a maximum rent is in effect pursuant to this act * * * notwithstanding the fact that the tenant has no lease or that his lease, or other rental agreement has expired or otherwise terminated ". (Emphasis supplied.) The key words are " So long as * * * [he] continues to pay the rent to which the landlord is entitled," and, since appellant did not pay any rent to respondent and the latter was not entitled to any, appellant· was not " entitled to the possession " of the housing accommodations and, therefore, did not come within the statute's definition of " tenant."

A regard for what was said in *Stern* v. *Equitable Trust Co.* (238 N. Y. 267) — which dealt with the emergency rent laws of the 1920's and was the first instance in which the concept of statutory tenancy was considered by this court — points the necessity of continued payment of rent to assure continued possession under the statute (p. 269) : " The primary, but not the only, purpose of the Emergency Rent Laws was to prevent the wholesale eviction of tenants *who were willing to pay a reasonable rent* but who could not agree with their landlords as to the amount to be paid. By suspending possessory

remedies under the lease, these laws extended, against the will of the landlord, the right of the tenant to remain in possession of the leased premises *so long as he continued to pay* what the Laws style ' a reasonable rental ' or ' a reasonable rent or price for their use and occupation.' '' (Emphasis supplied.) And, beyond that, the court explicitly held that even one who is a tenant under the statute and has its protection '' remains in possession, not by virtue of any agreement, express or implied * * * but by virtue of the compulsion which the law exerts on the landlord to allow him to remain. * * * The tenant does not offer any proposition to the landlord upon which the conventional relation of landlord and tenant * * * can be inferred '' (238 N. Y., at pp. 269–270). In short, there being no offer and acceptance, no attornment of occupant to owner — indeed, not even a willingness to pay rent — '' the relation of landlord and tenant does not exist '' (p. 269).

If, then, there never was a landlord-tenant relationship between the parties to this appeal, a relationship traditionally necessary for the successful prosecution of a nonpayment summary proceeding, the question arises, is there some reason, based upon considerations of fairness or equity, why such a relationship should be — as respondent contends — '' implied '' or why, perhaps, the proceeding should be allowed even in the absence of such a relationship? We have found none.

The Residential Rent Law has deprived the purchaser at the foreclosure sale of no right or remedy which he had theretofore possessed, at least against an occupant who has failed or refused to pay rent. Today, just as before, he may still apply to the Supreme Court for a writ of assistance (Civ. Prac. Act, § 985) or to the Municipal Court for a warrant of eviction (Civ. Prac. Act, § 1411, subd. 6). Against neither application does section 5 offer the nonpaying-rent-occupant protection. There is, therefore, no need or reason to bestow on the foreclosure purchaser, deprived of no remedy, a right which he never before had.

The emergency housing legislation, it is, of course, unquestioned, was passed, not to benefit '' landlords '' or grant them additional rights or remedies, but to protect '' tenants '' and assure them continued possession if they choose — or, to use

the statutory language, so long as they continue — to pay rent. It is a privilege granted the occupant, not a duty forced upon him, and, if he refuses to pay rent, thereby electing not to exercise his privilege, the foreclosure purchaser may not, willy-nilly, treat him as his tenant. It would be strange, indeed, to construe a statute meant to benefit tenants in favor of a '' landlord '' and find in its provisions basis or justification for subjecting an occupant — a foreclosed lessee such as appellant — to a personal judgment for rent, to which he could not have been subjected absent the statute, and for imposing upon him the status of tenant against his will.

The order of the Appellate Division and that of the Appellate Term should be reversed, with costs in those courts and in this court, and the final order of the Municipal Court dismissing the petition should be affirmed.

DESMOND, J. (dissenting). I would affirm here.

By the judgment in the mortgage foreclosure action to which defendant as tenant was a party, the tenant's lease expired just as if its term had run out, and, were it not for the emergency rent laws, there would thereafter have been no landlord-tenant relationship and summary proceedings would not have been available (*Greene* v. *Geiger,* 46 App. Div. 210; *Commonwealth Mtge. Co.* v. *De Waltoff,* 135 App. Div. 33, 35). But the emergency rent laws gave an occupant with an expired lease the status of a '' tenant '' if he chose to remain in possession (*Wasservogel* v. *Meyerowitz,* 300 N. Y. 125, 132; see definition of '' tenant '' in State Residential Rent Law [L. 1946, ch. 274, as amd.], § 2, subd. 7, and prohibition of evictions where a lease has '' expired '' in § 5, subd. 1). Therefore, when defendant continued in possession after foreclosure, he was a '' tenant within the emergency rent control law '' (*Harlem Sav. Bank* v. *Cooper,* 199 Misc. 1110, 1116; see *Pfalzgraf* v. *Voso,* 184 Misc. 575; *Da Costa* v. *Hamilton Republican Club,* 187 Misc. 865). With the benefits of that relationship went its burdens (*Wasservogel* v. *Meyerowitz, supra,* p. 132) including the burden of summary proceedings in event of nonpayment of rent under article 83 of the Civil Practice Act. May a tenant stay in possession but escape the obligations of a tenant merely by

failing to pay rent? The obligation to pay rent was not " imposed " on defendant — he assumed it by continued occupancy.

(In a sense, this proceeding might now be considered moot, since plaintiff has sold the building, but section 1425 of the Civil Practice Act seems broad enough to permit a judgment for *rent,* under these circumstances.)

LEWIS, Ch. J., CONWAY, FROESSEL and VAN VOORHIS, JJ., concur with FULD, J.; DESMOND, J., dissents in an opinion in which DYE, J., concurs.

Orders reversed, etc.