Alexander HIRSCH, Pauline R. Goldfein, Norman Essman, as Executor of Estate of Aimee D. Essman, Samuel W. Dorfman and The Chase National Bank, as Executors of Estate of Jacob R. Schiff, Matilda Hyman, Ella K. Dorfman, Harry Mabel and Louis Denberg, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. No. 13700.

United States District Court E. D. New York.

Jan. 8, 1959.

Supplemental Opinion Jan. 22, 1959.

Paul R. Shaw, New York City, for plaintiffs.

Cornelius W. Wickersham, Jr., U. S. Atty., Eastern District of New York,

Brooklyn, N. Y., Robert C. Carey, Asst. U. S. Atty., Brooklyn, N. Y., of counsel, for defendant.

BRUCHHAUSEN, District Judge.

The plaintiffs, the owners of a building located in the City of New York, instituted this action to recover the value of the use and occupation of the sixth floor of the building, claimed to have been occupied by the defendant's agent, the Director of Internal Revenue, during the period from May 21, 1952, to June 10, 1952. The action is based upon the Constitution of the United States, Article III, Section 2 and upon 28 U.S.C.A. § 1346(a) (2). That statute grants jurisdiction to this court of claims against the United States "not exceeding $10,000 in amount, founded either upon the Constitution, or * * * upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."

The defendant admits that its representative entered the premises for the purpose of levying under a tax lien upon the personal property of J. W. Geiger & Co., the lessee of the said sixth floor, but denies that it either expressly or impliedly agreed to make payment for use and occupation.

There is no evidence of an express contract. It has been held that an implied contract, within the meaning of the said statute, must be one implied in fact rather than in law. United States v. Minnesota Mutual Investment Co., 271 U.S. 212, 46 S.Ct. 501, 70 L.Ed. 911.

The facts are not in dispute. The issue is whether they support the claim that the defendant, by implication, agreed to pay for use and occupation.

The facts bearing upon the relationship between the plaintiffs and their tenant, Geiger, are that the plaintiffs leased the said sixth floor to Geiger for the term commencing on October 1, 1950 and terminating on January 31, 1954, at a fixed annual rental; that Geiger defaulted in payments of such rent; that on May 1, 1952, a warrant to dispossess Geiger was duly issued; that the plaintiffs made no attempts to retake possession until June 10, 1952, when they obtained possession by causing the execution of such warrant and that the defendant's representative at no time requested the plaintiffs to withhold the execution of the warrant.

The effect of the issuance of the warrant was to cancel the lease and to annul the relation of landlord and tenant then existing between the plaintiffs and Geiger and to permit the landlord to sue the tenant for any sums, payable by the terms of the lease. See Section 1434 of the New York Civil Practice Act. The subject lease entitles the plaintiffs to claim for rent against Geiger for the unexpired term, less the amount obtained from a new tenant during the said term.

We now consider the relationship of the defendant, through its agent, the Director of Internal Revenue, with respect to the demised premises. It appears that prior to May 1, 1952, the defendant filed liens for taxes against the personal property of Geiger; that the plaintiffs demanded that the defendant remove such property from the premises; that on May 21, 1952, while Geiger was still in possession of the premises, the defendant caused a levy to be made upon such personal property and placed a padlock on the premises, to which only the defendant's representative had the keys; that the plaintiffs made no objection to such holding of possession or to the padlocking; that on June 9, 1952, the District Director sold the tenant's personal property at a distraint sale; that the purchasers removed the property on June 10, 1952; that the Director then removed the padlock; that the premises were used by the Director only to store the property incidental to seizure and sale; that at no time did plaintiffs demand payment from the Director for use and occupancy.

It is abundantly clear that the plaintiffs were not in a position to deliver possession to the Director and hence could make no valid claim against

him for the value thereof. While the plaintiffs had the legal right to perfect their claim to possession, they failed to take advantage of it. Until such time as they executed the warrant of dispossess, the tenant was still lawfully in possession. Grattan v. P. J. Tierney Sons, Inc., 226 App.Div. 811, 234 N.Y.S. 399, followed in Whitmarsh v. Farnell, 298 N.Y. 336, 83 N.E.2d 543.

■ Furthermore, no cause of action exists for use and occupation unless there is a relationship of landlord and tenant between the owner and occupant. Lamb v. Lamb, 146 N.Y. 317, 41 N.E. 26; Preston v. Hawley, 101 N.Y. 586, 588, 5 N.E. 770.

■ An agreement for use and occupation is not implied by the mere showing of occupation of the premises, without proof of some circumstances authorizing an inference that the parties intended to assume the relationship of landlord and tenant toward each other, United Security Corp. v. Suchman, 307 N.Y. 48, 119 N.E.2d 881; Castle v. Armstead, 168 App.Div. 466, 153 N.Y.S. 266, affirmed in 219 N.Y. 615, 114 N.E. 1062; Preston v. Hawley, supra. See also Miller v. Schloss, 218 N.Y. 400, 113 N.E. 337. There can be no such implication where the acts and conduct of the parties negative its existence. Stern v. Equitable Trust Co., 238 N.Y. 267, 144 N.E. 578.

In summary, it appears that the defendant did not interfere with or take possession of the premises from the plaintiffs during the subject period of time for the simple reason that the plaintiffs were not in possession thereof. The tenant Geiger was in possession. The padlocking by the defendant violated no right of the plaintiffs. The plaintiffs were at liberty to oust the tenant and, incidentally, its personal property, if they so elected. In that event, the Marshal would have removed the padlock and deposited the personal property upon the sidewalk. The defendant, operating under its right as a tax lienor, would then be free to transport the property to a suitable place for sale in satisfaction of its lien. In its capacity as a tax lienor neither the defendant nor its representative had the right of possession of the demised premises.

There is no proof whatsoever that the defendant or its representative, the District Collector, intended to or did enter into a relationship of landlord and tenant with the plaintiffs.

While it is not the Court's function to trespass upon the domain of the executive branch of the Government, it may not be amiss to offer a few suggestions. It seems, in all fairness, that the Government should immediately remove seized property to its warehouse or place where it intends to conduct a sale thereof, unless the party in possession of the demised premises consents that it remain there. The plaintiffs would have improved their position if they had executed or threatened to execute the warrant.

The defendant is entitled to judgment in its favor. Submit a decree to that effect.

### Supplemental Opinion

On January 8, 1959, this Court filed its opinion granting judgment in favor of the defendant and directed that a decree to that effect be submitted for signature.

The defendant has submitted the decree and the plaintiffs have interposed a memorandum in support of reconsideration of the determination. It is appropriate that the Court comment upon the contentions made therein.

### The Plaintiffs Mistakenly Intimate That A City Marshal Was Not At Liberty To Remove The Padlock

The plaintiffs indicate that such removal of the padlock would place the marshal in the position of determining the illegality of federal administrative action.

In the first place the question of the removal of the padlock would not have arisen if the plaintiffs had used due diligence in procuring the execution of the warrant issued on May 1, 1952. At that

time no levy had been made nor were the premises padlocked. Those occurrences did not take place until May 21, 1952, some three weeks later.

Furthermore, the defendant made no claim to possession of the premises. It had no interest in such possession. Its claim was limited to protecting its rights as a tax lienor including the right of seizure and removal of the personal property preparatory to a public sale. If a party in interest had protested the padlocking, the defendant could then have placed a guard at the premises or removed the personal property to another location.

The marshal's duties and the defendant's rights were not in conflict. Reiterating, the marshal had the power of procuring and delivering to the plaintiffs possession of the premises, to which the defendant made no claim. As soon as the marshal informed the defendant that he sought possession, the defendant would then have been obliged to remove the personal property from the premises.

### The Plaintiffs Confuse The Issues Of Tenancy And Dispossess Of A Tenant And The Principles Applicable Thereto

The question of whether or not an entity is a tenant is governed by the common law. Prior to the summary proceeding statute for dispossess of a tenant, a landlord's remedy was primarily the cumbersome common law proceeding of ejectment.

### As To The Remedy Of Dispossess

The plaintiffs insist that this court was in error in holding that "until such time as they executed the warrant of dispossess the tenant was still lawfully in possession." The plaintiffs will find that this principle was upheld in Grattan v. P. J. Tierney Sons, Inc., 226 App.Div. 811, 234 N.Y.S. 399. This case was decided in 1920 and did not involve an Emergency Rent Control Statute. The plaintiffs seem to misconstrue that statute. It in no wise altered the law pertaining to the process of obtaining possession by warrant of dispossess. There are, it is true, some provisions contained therein for delaying a proceeding or a warrant under certain circumstances but the basic law of eviction and delivery of possession still prevails. It is not necessary to detail those provisions here for the simple reason that they are not in issue.

### As To The Issue Of Tenancy And The Claim For Use And Occupation In Connection Therewith

The case of Bonfils v. Ledoux, 8 Cir., 266 F. 507, 16 A.L.R. 430, cited by the plaintiffs, does not conflict with the decision of this Court. Bonfils and Greaves, who were directed by the court to pay for use and occupation, were tenants of the property involved in the litigation. In this connection the Court at page 508, said:

"Although he (Greaves) was the title holder (of the lease), the defendant Bonfils and one Tammen, who is not a party to the suit, were co-owners each having a third interest in the lease."

The relationship of landlord and tenant unquestionably existed in the Bonfils case but not in the case at bar.

The ruling in the Bonfils case, relied upon by the plaintiffs, is largely founded upon the case of Carpenter v. United States, 17 Wall. 489, 21 L.Ed. 680, wherein the Court sets forth the principles of implied tenancy and points out that "an unexplained entry" upon real property may lead to an implied contract of possession "because it is a reasonable presumption that occupation thus taken was intended to be paid for." Continuing, the Court said:

"No reason, however, for such an implication exists, when an express contract or an arrangement between the parties shows that it was not intended by them to constitute the relation of landlord and tenant, but that the occupation was taken and held for another purpose."

There was no "unexplained" entry in the case at bar. On the contrary, an ex-

planation was given. It was conceded that the premises were to be used only to store personal property incidental to seizure and sale. Furthermore, paraphrasing the aforesaid quotation in Carpenter there was an arrangement that the defendant's use was for a purpose other than tenancy, i.e., for the temporary storage of liened personalty. It is clear that the defendant entered merely to protect its rights as a lienor, not to occupy the premises.

The plaintiffs have not established that the lienor became a tenant.

The Court adheres to its prior decision in this case.