Harry T. Nusbaum, J.
The issue to be determined in this action is whether the defendants who acquired title to heavy machinery and equipment located on premises formerly leased to and occupied by a now bankrupt subtenant can be held accountabl for either the fair rental value, the use and occupancy of, *1056 or for storage charges during the period the machinery and equipment remains on the premises.
These are the pertinent facts which gave rise to the problem. The plaintiff, a tenant of the entire building premises located at 833 Shepherd Avenue, Brooklyn, New York, subleased such premises to the Linden Backing Corporation on February 1, 1969 which assumed to pay the rent of $898.43 per month reserved in the main lease between the plaintiff and the owner of the building and agreed to be bound by all the terms, covenants and conditions contained in the main lease.
On May 11, 1970, the defendants, Mint Factors made a loan to the Linden Backing Corporation which was secured by an interest in all of Linden’s personal property. On or about April 26, 1971, an involuntary petition in bankruptcy was filed against the subtenant Linden in the United States District Court for the Eastern District of New York. On April 30,1971, the Internal Revenue Service, in order to liquidate its tax liens against the bankrupt, conducted a public auction at which it sold all its right, title and interest in the bankrupt’s personal property to a third party, admittedly acting for defendants, who on the same day April 30, 1971, assigned his right, title and interest in the property to the defendants, Mint Factors.
Thus on April 30, 1971, the defendants had acquired full title to the property described as a “Combining Plant” for the manufacturer of ladies ’ slippers. The plant equipment consisted of large bulky and heavy machinery some of which could not be removed from the premises unless it was first dismantled by riggers at considerable expense. The property remained on the premises until August 13,1971 when it was sold to a third party who removed it from the premises at an alleged cost of $1,250.
During the period the machinery and equipment remained on the premises both oral and written demands for rent and/or storage charges were made which were summarily rejected by the defendants who by letters dated May 28 and June 11, 1971, advised the plaintiff, (1) that there was no landlord and tenant relationship between them, (2) that they had made no agreement to pay for storage space and, (3) that there was no expressed or implied use and occupancy of the premises by them. In addition, the plaintiff was advised that it was privileged to commence dispossess proceedings at any time but would be held strictly accountable for any loss or damage to the machinery and equipment removed and that they, the defendants, had not and did not intend to abandon any of the property remaining on the premises.
*1057 The anomalous position taken by the defendants is somewhat ironic. ..They have adopted the stance that their refusal to enter into any agreement concerning the use of the plaintiff’s real property freed them from any liability for its use and permitted them to both ignore the plaintiff’s demand for compensation and to frustrate its ability to relet the premises for a period of three and one-half months. As business people whose main commodity is money, they appear to be singularly lacking in concern for the property rights of others.
I disagree, with the position assumed by the defendants and reject the concept that the plaintiff is remediless and the court powerless to remedy an obvious injustice (West St. Auto Serv. v. Schmidt, 26 A D 2d 662).
The defendants’ insistence that the plaintiff could or should have brought a dispossess proceeding against the bankrupt subtenant (despite the enormous removal costs involved) and failing this, its only remedy is against the bankrupt tenants’ estate, fails to take into account the terms of the lease. No proof was introduced as to whether the plaintiff lessor terminated the lease pursuant to the provisions of paragraph 17 thereof which permitted such termination upon five days’ notice after the filing of a bankruptcy petition, but this court is of the opinion that the provisions of paragraph 8, of the main lease were availed of by the plaintiff and sanctioned the actions taken by it.
The landlord had the right in the event the premises “ shall be deserted or become vacant during said term or if any default be made in the payment of the said rent * * * ” to re-enter the premises by force, summary proceeding or otherwise and to rent the premises to others without releasing the original tenant from liability. After the filing of the bankruptcy petition against the tenant, its cessation of doing business, the assertion of control over and the sale of the tenant’s personal property by the Internal Revenue Service, the acquisition of title to all the tenant’s personal property by the defendants and the failure of the tenant to pay the rent due under the lease, can it be argued that the tenant had not deserted the premises? I think not.
It is my opinion that the plaintiff pursuant to the terms of the lease could at that point re-enter and exercise dominion over the premises. Its subsequent demand that the defendants pay rent, use and occupation or storage charges while their property remained on the premises and during which time the landlord could not relet the premies, were valid and proper.
*1058 To avoid payment of the plaintiff’s claim for compensation during this period the defendants rely upon those cases which have held that persons who are not parties to the lease are not liable to the lessor for rent in the absence of privity of contract or estate which would create a landlord-tenant relationship (People v. New York World’s Fair, 1939, 259 App. Div. 739, affd. 286 N. Y. 587), and that no recovery for use and occupation can be had unless there had been a prior relationship of the landlord and tenant or an express agreement to pay for use and occupancy (14 Second Ave. Realty Corp. v. Steven Corp., 16 A D 2d 751, affd. 12 N Y 2d 919; Castle v. Armstead, 168 App. Div. 466). The defendants have, however, overlooked those cases which hold that an action will lie even against a trespasser to recover the reasonable value of the use and occupation of property and the simple rules of equity and justice which must prevail (City of New York v. Fink, 130 Misc. 620; De Camp v. Bullard, 159 N. Y. 450; Bunke v. New York Tel. Co., 110 App. Div. 241, affd. 188 N. Y. 600; Goelet v. National Sur. Co., 249 N. Y. 287; Nims v. Mayor, 59 N. Y. 500).
In the case of the De Camp v. Bullard (supra, p. 454) the court in discussing the measure of damages to be applied in a case of trespass made the following statement: “If a man’s house is vacant with no prospect of a tenant and no intention on his part of occupying it himself, and a trespasser occupies it, he must pay as damages for the trespass the value of the use and occupation, for this would be the duty of a tenant contracting upon a quantum meruit for the use, by consent, of that which the trespasser uses without consent. In cases of involuntary trespass the damages are restricted * * * but when the trespass is deliberate, intentional and continuous, they include, at least, the value of the use of the premises for the period that the owner is kept out of possession.”
In the more recent case of West St. Auto Serv. v. Schmidt (26 A D 2d 662, supra) the court reaffirmed the rule with respect to. the measure of damages applicable in cases of trespass and cited with approval the statement made by Bartlett, J., in the case of Bruce v. Welch (5 N. Y. S. 668): “ Good morals certainly forbid that a man should be allowed to derive benefit from a violation of his obligations to others. Does the law permit a wrong-doer to retain to himself advantages thus gained as against the person whom he has wronged? I think not.”
I am of the opinion that these quotations are particularly appropriate to the facts in the case at bar. The defendants acquired title to massive pieces of machinery and equipment located on the plaintiff’s premises. The plaintiff made repeated *1059 requests that the machinery and equipment be removed from the premises or in the alternative that the reasonable value of use and occupancy of the premises be paid. The tenants did neither and in my view their continued occupancy of the premises without consent and without payment constituted a trespass.
An expert on behalf of the plaintiff testified that the reasonable rental value of the premises in question is and was between $16,000 and $17,000 per year. The landlord herein seeks to recover the sum of $3,480 for the 3 months and 13 days that the defendants allowed their personal property to remain on the premises. The premises were subsequently let for the sum of $898.43 per month, the same rent as was reserved in the original lease, and I am of the opinion that the reasonable value of the use and occupation of the premises was $898.43 per month and therefore fix as the damages recoverable by the plaintiff in this action the sum of $3,085 plus interest from August 13, 1971.
The judgment herein is found to be due under the first cause of action pleaded by the plaintiff. Although no specific action in trespass was stated, the plaintiff in that cause of action sought to recover the sum of $3,480 as the fair and reasonable value for the premises occupied and used by the defendants. Under the authority vested in our courts by the provisions of the CPLR 2001 and 3017 (subd. [a]), I am of the opinion that the relief although not specifically requested may be granted as such relief is consistent with the case made by the complaint and is embraced within the issues. (3 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 3017.06, p. 30-258 et seq.)