Frank S. Rossetti, J.
This claim is for damages in the amount of $1,050 resulting from the alleged illegal occupancy by the State of property OAvned by claimants and leased to a third party.
*769 Claimants were the owners of a two-story building located in Hamburg, New York. The first floor of said premises was leased to John and Dolores Danahy (hereinafter “ tenants ”) who conducted a restaurant and tavern business therein. Their five-year lease, commencing October 1, 1967, obligated them to pay a monthly rental of $400 for the first two years and $450 thereafter. On or about January 25, 1971, the State of New York, through its Sales Tax Bureau, padlocked the entrance door to the leased premises and thus effectively locked out the tenants as well as claimants.[1] This action was apparently pursuant to a tax levy filed against the tenants for unpaid sales taxes (see Tax Law, § 1141, subd. [b]). On April 2, 1971, a public auction was held and certain equipment belonging to the tenants was offered for sale. On this date, the padlock was removed and claimants thereupon regained access to the first floor of said premises.
As best can be ascertained from the evidence on hand, claimants made a fruitless demand for back rent from the tenants, but no legal action was commenced for the collection thereof or for the repossession of the premises.[2] Consequently, for all intents and purposes, the tenants were in lawful occupancy of the premises at the time the State padlocked the door and during the continuance of said padlocking. Claimants now seek to recover from the State the sum of $1,000 for rental due during the time they were physically deprived of access to the leased premises. Additionally, claimants seek to recover $50 for structural damages allegedly caused by the State in removing the tenants ’ personalty.
Given these operative facts, claimants argue that the State is liable under an implied-in-law contract and, furthermore, that the State’s actions constituted a taking of private property without just compensation in violation of the Fifth and Fourteenth Amendments of the United States Constitution. The State counters that it was not under a contractual relationship (e.g., landlord-tenant) with the claimants and their only recourse is against the tenants who were lawfully in possession of the demised premises pursuant to the lease.
Counsel for both sides were unable to find any New York law pertaining to the specific issues at bar and the court’s own *770 research leads us to believe this is a case of first impression in this jurisdiction.[3]
It should first be pointed out that claimants do not seek recovery on any express or implied-in-fact contract by the State to pay rent. An obligation to pay rent will not be implied from mere occupancy. (See Carbury v. Archer, 28 Misc 2d 802; Castle v. Armstead, 168 App. Div. 466, affd. 219 N. Y. 615.) There must be an agreement between the parties or at least circumstances from which the inference of an agreement can be drawn. (See Davis v. Caldwell, 1 A D 2d 827; Ernst v. Celtner Brewing Co., 117 N. Y. S. 922; Genet v. Willock, 93 App. Div. 588.) Here, it was not even shown claimants demanded rent from the State (see Preston v. Hawley, 101 N. Y. 586; see, also, Thachray v. Ritz, 130 Misc. 403), much less that the State agreed to the payment thereof. In fact, there was some evidence indicating claimants acquiesced in the State’s occupancy.[4] Thus, the attendant circumstances in no wise warrant an inference of any intention by the State to be responsible for rent or of the creation of a landlord-tenant relationship. (See Glickman v. Glenwood-Syosset Appliances Corp., 45 Misc 2d 655; Walker v. State of New York, 15 Misc 2d 4; Geist v. State of New York, 3 Misc 2d 714; Stern v. Equitable Trust Co., 238 N. Y. 267.)
Secondly, we do not find the State liable under an implied-in-law contract. An implied-in-law or quasi contract is not a contract at all, but an obligation imposed by law to avoid unjust enrichment. (See Bradkin v. Leverton, 26 N Y 2d 192; Miller v. Schloss, 218 N. Y. 400.) This equitable doctrine is not applicable to the instant facts since any would-be unjust enrichment was not at claimants’ expense. Claimants had no present right to possession at the time of the complained of acts, because that right remained in the tenants. (See Hirsch v. United States, supra; Kiersted v. Orange and Alexandria R. R. Co., 69 N. Y. 343.) At all times during the State’s padlocking of the demised *771 premises, the governing lease remained in force and was not terminated. The only relevant conditional limitation in the lease capable of automatically terminating it (see 34 N. Y. Jur., Landlord and Tenant, §§ 351-353) was the total or partial acquisition or condemnation of the premises “ by eminent domain ”, and we do not construe the lease as including the State’s padlocking within such a provision. All other terminative conditions in the lease were at the option of the landlord and were not self-executing. No sufficient evidence was adduced establishing the exercise by claimants of any options to terminate the lease, for nonpayment or otherwise (e.g., abandonment; see Rand Prods. Co. v. Mintz, 69 Misc 2d 1055, aff. 72 Misc 2d 621 [App. Term, 1st Dept.]; but see Foureal Co. v. National Molding Corp., 74 Misc 2d 316). The State thus held possession against the tenants, not against the claimants.
In effect, the State used the demised premises for the warehousing of the tenants’ property pending sale. This was actually for the tenants’ benefit since, if the State removed the property and stored it until sale, these moving and storing expenses would have been a charge against the proceeds of the sale (CPLBp 5234, subd. [a]). Such a charge would have reduced the total amount available to pay the tenants’ sales taxes and also their other creditors, such as claimants. Be that as it may, it is clear any putative unjust enrichment by the State was at tenants’ expense and not claimants’.
In weighing the equities, it should be remembered that during the entire period of the State’s occupancy the tenants remained fully obligated to pay the rent. As noted above, claimants had not terminated the lease and no event had occurred automatically terminating it.[5] Therefore, the lease and the tenants’ concomitant obligation to pay rent thereunder remained in full force and effect. Also, the tenants’ liability was a continuing one since their obligation to pay rent for the full term survived and was independent of a premature termination of the lease. Hence, claimants had clear and complete recourse against the parties who had contracted to pay the rent and there appears no reason, in law or equity, for the imposition of an additional liability against the State.
Claimants’ constitutional argument (see U. S. Const., 5th and 14th Arndts.; N. Y. Const., art. I, § 7) is also without merit *772 since none of their property was taken. The State occupied the premises under the tenants’ right of possession (see Woodworth v. Harding, 75 App. Div. 54; Whitman v. Bowe, 56 Hun 141; Kiersted v. Orange and Alexandria R. R. Co., supra) and until claimants acted to terminate that right, they had no claim against the State for a temporary 3e facto appropriation. (See Keystone Assoc. v. State of New York, 39 A D 2d 176, affd. 33 N Y 2d 848.) As previously mentioned, the existing lease remained in full force and effect and although claimants had grounds to cancel same, they did not elect to do so. The claimants thus had no right to possession and therefore the State’s acts did not constitute a. taking as against them. (See Roxfort Holding Co. v. United States, supra; Pauchogue Land Corp. v. Long Is. State Park Comm., 223 App. Div. 733, affd. 248 N. Y. 635.)
With respect to the claim for structural damages allegedly caused by the State, claimants ’ evidence of the proximate cause and amount of such damages was wholly inadequate.
In conclusion, it is our determination that claimants have failed to sustain their burden of proving a cause of action against the State and, accordingly, this claim is hereby dismissed on the merits.

. A small part of the first floor (an enclosure under the stairs) not within the demised premises was also closed off to claimants by the padlocking, but no claim was made with respect thereto.

. Claimants did file a “ creditor’s lien ” in a bankruptcy proceeding instituted by the tenants on or about March 23, 1971, but the status oE this proceeding was not developed during trial.

. Federal eases involving Federal tax levies were cited by the parties and researched by the court. Only two such eases originated in the New York District and both denied recovery. (See Boxfort Holding Co. v. United States, 176 F. Supp. 587 and Hirsch v. United States, 170 F. Supp. 229). Other Federal cases in sister States were found permitting recovery, but they were of limited value herein due to factual dissimilarities and differences in Federal regulations and State laws. (See, e.g., American Oil v. United States, 74-2 U. S. T. C. 9633; Smith v. United States, 458 F. 2d 1231; Maryland Nat. Bank. v. United States, 227 F. Supp. 504; Feldwin Realty v. United States, 169 F. Supp. 73; but see Paterson Strange Mills v. United States, 59-2 U. S. T. C. 9723.)

. Ralph Marrano admitted that he may have requested a postponement of the sale of tenants’ property until he returned from vacation,

. Tenants’ bankruptcy during the State’s padlocking did not terminate the lease since claimants had to “ elect ” to terminate on such grounds and no exercise of such option was shown. (See Broadex Realty Corp. v. Jones, 211 App. Div. 96; Witthaus v. Zimmerman, 91 App. Div. 202.)