HUDSON VALLEY SAND AND STONE COMPANY, INC., Respondent-Appellant, v STATE OF NEW YORK, Appellant-Respondent. (Claim Nos. 57581, 58378.)

Third Department, May 26, 1977

*Keniry & Keniry (Patrick J. Keniry* of counsel), for respondent-appellant.

*Louis J. Lefkowitz, Attorney-General (Joseph F. Gibbons* and *Ruth Kessler Toch* of counsel), for appellant-respondent.

GREENBLOTT, J. P. Claimant, the owner of a building in the City of Mechanicville, New York, leased said premises to one Conerty for a five-year period ending September 30, 1971. On April 26, 1971, the State Tax Commission issued a tax warrant in the amount of $30,639.42 against Conerty, individually and as president of Conerty Pontiac-Buick, Inc., the business operated on the premises. To enforce the warrant, the commission placed padlocks on the door of the leased premises and posted signs proclaiming the seizure. Thereafter, pursuant to an agreement between the commission and Conerty, the business was allowed to reopen temporarily but upon Conerty's default on August 15, 1971, the establishment was again locked. Subsequently, before a public auction could be held, the Marine Midland Bank obtained a temporary restraining order enjoining Conerty and the commission from "making any transfer or disposition of" the personal property of the business located on claimant's premises, and on March 20, 1973 Special Term granted the bank's motion for a stay of the sale and continued in effect the previously issued temporary restraining order. Ultimately, on March 28, 1974, Special Term ruled that the bank's security interest in the taxpayer's personal property had priority over the State's tax lien and ordered the commission to release all of the property to the bank *(Marine Midland Bank-Eastern Nat. Assn. v Conerty Pontiac-Buick,* 77 Misc 2d 311). As a result, on April 25, 1974, the commission removed its padlocks from the building and delivered the property to the bank.

Claimant then filed the instant claim against the State wherein it sought to recover, for the period from April 26,

1971 to April 25, 1974, the fair and reasonable rent of the premises leased to Conerty. The Court of Claims ruled in favor of the claimant, holding that a *de facto* taking of claimant's property was established, and determined that the State was liable to claimant for the period subsequent to the expiration of the Conerty lease, i.e., September 30, 1971 to April 25, 1974. Accepting the leased monthly rent of $334.07 as the fair and reasonable rental value of the premises, the Court of Claims awarded claimant $10,356.17 plus interest. Both parties appealed, claimant contending that it should have recovered for the period from April 26, 1971 to September 30, 1971, and the State arguing that no taking was proven.

We find no merit in claimant's cross appeal since Conerty's lease remained in full force and effect until September 30, 1971, with the result that claimant had no possessory interest in the leasehold under any possible construction until that date *(Roxfort Holding Co. v United States,* 176 F Supp 587; *Marrano v State of New York,* 80 Misc 2d 768).

Passing then to the State's appeal, we are constrained to reverse the judgment of the Court of Claims and dismiss the claim. Since the initial act of the State in padlocking the Conerty premises was an act directed solely against tenant Conerty and gave no possessory right to the landlord claimant, there obviously was no *de facto* appropriation of claimant's property. When the lease between Conerty and the claimant expired on September 30, 1971, and the tenant failed to vacate the demised premises, the landlord was entitled to proceed under the provisions of section 232-c of the Real Property Law. At that time, the claimant was empowered to proceed "in any manner permitted by law" to remove the tenant. This the claimant failed to do, taking no action and sleeping on its rights until the padlock was voluntarily removed by the State. It is not even contended that claimant demanded rent from the State (see *Preston v Hawley,* 101 NY 586; *Marrano v State of New York,* 80 Misc 2d 768, *supra).*

Furthermore, we note that the possession and control which constituted the alleged *de facto* appropriation were not in fact exclusively in the State Tax Commission but were under court control during a portion of the period of time herein involved. Injunctions were in effect from August 27, 1971 through March 28, 1974, which enjoined and restrained the State Tax Commission from transferring or disposing of Conerty's assets.

The judgment should be reversed, on the law and the facts, and the claim dismissed, without costs.

MAIN, J. (concurring in part and dissenting in part). We agree that the court properly denied any recovery to this claimant for the period prior to September 30, 1971. However, we are unable to agree with the majority's remaining conclusions and, therefore, dissent and vote to affirm.

Clearly, there was a *de facto* appropriation of the claimant's property. Obviously, the State's action in padlocking the premises and posting the usual signs to enforce a tax lien against the property of the former tenant effectively ousted the claimant landlord from his property for a public purpose. When this occurs, it is now well settled that there has been a compensable taking (*Smith v United States*, 458 F2d 1231, 1233; *American Oil Co. v United States*, 383 F Supp 1281).

While the landlord may have been entitled to proceed under section 232-c of the Real Property Law, his failure to do so was no waiver of his right to compensation and his conduct is no bar to a recovery, since acquiescence in a taking does not necessarily indicate that the owner does not expect compensation (3 Nichols, Eminent Domain [3d ed], § 8.82, subd 2). As Nichols (*supra*, p 251) states: "It is also settled that the acquiescence by the owner, express or tacit, in the occupation of his land for a public use without compensation in advance * * * does not constitute a waiver of the right to recover compensation for the taking, and is no defense to an action at common law by the owner to recover compensation for the occupation of his land." (See, also, *Galway v Metropolitan El. Ry. Co.,* 128 NY 132.)

Dealing with a strikingly similar situation, the court stated in *Maryland Nat. Bank v United States* (227 F Supp 504, 508): "The government put its lock on the premises and placed notices on the outer walls telling of the seizure. These facts convince the court that a taking took place [citation omitted], notwithstanding the lack of demand by the plaintiffs to vacate or the possibility that the government would have vacated upon request."

Next, we respectfully but vigorously disagree with the majority's statement "that the possession and control which constituted the alleged *de facto* appropriation were not in fact exclusively in the State Tax Commission but were under court control during a portion of the period of time herein involved"

and that "injunctions were in effect * * * which enjoined and restrained the State Tax Commission from transferring or disposing of Conerty's assets". As the record plainly indicates, the sole purpose of the injunctions was to stay the sale of the taxpayer's property until priorities could be established and the language of the orders enjoining the State from "transferring or disposing" of the property only forbid the State from *transferring ownership* or similarly disposing of the personal property. Nothing contained therein prevented the State from transferring the property to a proper storage facility and thus freeing the claimant's building. In conclusion, the adoption by the Court of Claims of the rent actually received from Conerty as a measure of the damage was entirely proper (cf. *Dipson Realty Co. v State of New York,* 39 AD2d 636).

The judgment should be affirmed.

LARKIN and HERLIHY, JJ., concur with GREENBLOTT, J. P.; SWEENEY and MAIN, JJ., concur in part and dissent in part in an opinion by MAIN, J.

Judgment reversed, on the law and the facts, and claim dismissed, without costs.