**FELDWIN REALTY CO., a corporation of the State of New Jersey, Plaintiff,**

v.

**UNITED STATES of America, and Joseph F. J. Mayer, District Director of Internal Revenue, Defendants.**

Civ. A. No. 436–57.

United States District Court
D. New Jersey.

Jan. 15, 1959.

Harkavy & Lieb, Jerome S. Lieb, Newark, N. J., for plaintiff.

Chester A. Weidenburner, U. S. Atty., Newark, N. J., Barbara A. Morris, Asst. U. S. Atty., Montclair, N. J., for the Government.

HARTSHORNE, District Judge.

The United States Government levied for taxes (26 U.S.C.A. § 6331) upon property of a former tenant of plaintiff, which property was then lying in plaintiff's premises, some of it attached thereto. Defendant Government thereupon padlocked such premises. The question is whether thereby, and under the other

circumstances hereafter alluded to, the defendant Government must pay plaintiff in these proceedings for the use of such premises to store such property.

Defendant Government doesn't question the fact that, were it not a sovereign, it would be compelled to pay therefor. It claims that, being a sovereign, (1) it cannot be sued without its consent, a contention which is not controverted; (2) the consent and suit here are under the Tucker Act (28 U.S.C.A. § 1346(a) (2); [1] (3) such Act, while authorizing suit upon an express contract or one implied in fact, does not authorize a suit upon a contract implied in law; Merritt v. United States, 1925, 267 U.S. 338, 45 S.Ct. 278, 69 L.Ed. 643; United States v. Minnesota Mutual Investment Co., 1926, 271 U.S. 212, 46 S.Ct. 501, 70 L.Ed. 911; and (4) the facts here show the contract to be one implied in law, but not in fact.

This defense raises a technical question which has caused both the courts and the textbook writers some difficulty. Perhaps the most accurate distinction between a contract implied in fact and one implied in law is that made by Professor Williston in his work on Contracts, where he says:

"The expression 'implied contract' has given rise to great confusion in the law. * * * Some of these rights [enforced by contractual actions] however were created not by any promise or mutual assent of the parties but were imposed by law on the defendant irrespective of and sometimes in violation of his intention. Such obligations were called implied contracts. A better name is that now generally in use of 'quasi contracts.' This name is better since it makes clear that the obligations in question are not true contracts and also because it avoids con-

fusion with another class of obligations which have also been called implied contracts. This latter class consists of obligations arising from mutual agreement and intent to promise, but where the agreement and promise have not been expressed in words. Such transactions are true contracts and have sometimes been called contracts implied in fact * * * *" Williston on Contracts, Vol. I, § 3 (Rev.Ed.1936).

Largely, though not entirely, therefore, the question is one of intent. Did the parties intend to obligate themselves to each other or not? If they did, we have a contract implied in fact. If they did not, and there is any contractual obligation at all, it is a contract implied in law.

The facts here consist not only of a stipulation, but also of testimony taken in open court. There has also been received in evidence the Internal Revenue Regulations governing the conduct of the Internal Revenue officials on "Preliminary Investigation and Seizure Action" at the time. These show not only what these subordinate officials should do during such proceedings, but the intent of the Government, when such proceedings are being carried out by these subordinate officials. The Regulations, for instance, specifically require that:

"(1) Before making a seizure, Collection Officers should anticipate problems which may arise in connection with the storage and protection of the property during the period of seizure and, if necessary, be certain that preliminary arrangements are made so that the property will be properly protected immediately after and during the entire period of seizure. If necessary for such protection movable property should be stored in a warehouse operated by a

---

1. "(a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of: * * *

"(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."

responsible party. \* \* \* (5332 (1))

"(2) When the property seized is located in rented premises and consists of machinery or other heavy articles not easily transported, or is made up of a considerable quantity of business assets, arrangements should be made with the landlord for storage of the property on the premises. Every effort should be made to secure the landlord's permission to store the property on the premises rent free for the period required for the completion of the seizure and sale proceedings. If such permission cannot be secured, a reasonable charge for storage should be arranged with the property owner. This charge should be based only upon the number of days of actual occupancy under the seizure. In no event should a Collection Officer undertake to obligate the Government for rent without prior approval of the Chief, DAR Branch."

The intent of the defendant Government is thus clear that upon the seizure under tax levy of articles of a taxpayer, such as here occurred, if in rented premises, as here occurred, (although in fact the taxpayer's tenancy had just been terminated for nonpayment of rent) "arrangements should be made with the landlord for storage of the property on the premises." While "every effort should be made to secure the landlord's permission to store the property on the premises rent free, \* \* \* if such permission cannot be secured a reasonable charge for storage should be arranged with the property owner \* \* \*" The intent of the defendant Government, not only generally but specifically in this case, due to the binding effect of these Regulations on the seizing officers, was therefore clear that, where, as here, the landlord was not willing to store the property rent free, the Government intended to arrange "a reasonable charge for storage \* \* \* with the property owner." Such was the Government's intent—this intent not being affected in

the slightest by the fact that the fixing of the actual amount of this intended charge must be by a higher official.

As to the intent of the landlord plaintiff, who had previously distrained for rent and locked the taxpayer's property in the previously rented premises, all before the tax levy, the Government does not claim that he ever agreed to store the goods in question rent free. Further, it is interesting to note that even before the above Regulations were brought to light by the Government, both the plaintiff landlord and his son-in-law testified that the levying Internal Revenue officials told them, both before and at the time of the Government sale under the levy, that the landlord's claim would be taken care of out of the proceeds of the sale, and that this was the customary procedure. This conforms with the above quoted Regulations and also with the provisions of the Regulations, § 301.-6341–1, § 301.6342(a) (1), Title 26 C.F.R., Revised Ed. 1955, providing that the expenses of sale shall include those for the "protection and preservation of the property during the period subsequent to the levy", and that expenses shall be applied against any amount realized at the tax sale. Despite the fact that the levying officers did not recall having made any such statements to the landlord, it would seem quite likely that they would have told him the substance of these Regulations which governed them, as above. Further, it is quite clear from the evidence that this met with the approval of the landlord.

Thus we have a situation where both parties to the transaction intended that these goods, levied on by the defendant Government, were to be stored by the plaintiff landlord, and that this storage was to be paid for, the amount simply being left uncertain temporarily. Under such circumstances this amount must be such as these services or use and occupation were reasonably worth. That this is the typical situation of a contract implied from the facts and the intent of the parties is clear; that it is not typical of a contract implied in law, contra the

intent of the parties, is equally clear. See Hirsch v. U. S., D.C.E.D.N.Y.1954, 120 F.Supp. 808 to the same effect. It might be added that in the same case, when later heard on the merits, the facts showed that the landlord did not have any present right to the property seized; hence he could not claim that the Government seized his property. Therefore, *Hirsch* has no bearing on the facts presented in this case. See opinion filed by Bruchausen, J., January 8, 1959.

Furthermore, there is an entirely separate and distinct ground, on which it would seem that the defendant Government was liable to the plaintiff landlord, a ground not argued by the parties, but which seems apparent on the face of the papers, the Tucker Act and the Constitution of the United States. The Fifth Amendment provides: " *   *   * nor shall private property be taken for public use without just compensation." The Tucker Act, above quoted, also provides that "(a) the district courts shall have original jurisdiction concurrent with the Court of Claims, of: *   *   *  (2) any other civil action or claim against the United States *   *   * founded *   *   * upon the Constitution *   *   *"

The complaint filed herein recites, as the basis of jurisdiction, the Tucker Act, and seeks judgment upon the above facts. This suffices to outline a cause of action either upon a contract implied in fact or upon the basis of the Constitution, Amendment 5, itself. As the Court said in United States v. Dickinson, 1946, 331 U.S. 745, 748, 67 S.Ct. 1382, 1384, 91 L. Ed. 1789:

> " *   *   * These suits against the Government are authorized by the Tucker Act either as claims 'founded upon the Constitution of the United States' or as arising upon implied contracts with the Government. (See the discussion of jurisdiction both in the opinion of the Court and in the concurring opinion in United States v. Lynah, 188 U.S. 445, 23 S.Ct. 349, 47 L.Ed. 539, and in Tempel v. United States, 248 U.S. 121, 39 S.Ct. 56, 63 L.Ed. 162.) But whether the theory of these suits be that there was a taking under the Fifth Amendment, and that therefore the Tucker Act may be invoked because it is a claim founded upon the Constitution, or that there was an implied promise by the Government to pay for it, is immaterial. In either event, the claim traces back to the prohibition of the Fifth Amendment, 'nor shall private property be taken for public use, without just compensation.' The Constitution is 'intended to preserve practical and substantial rights, not to maintain theories.' Davis v. Mills, 194 U.S. 451, 457, 24 S.Ct. 692, 695, 48 L.Ed. 1067."

This, and the underlying cases, cited by our highest Court, show clearly that where there is a taking of property, not by condemnation but by other governmental action, the property owner may recover just compensation, the specific means to do so being by an action under the Tucker Act in either this Court or the Court of Claims.

That the action of the Internal Revenue levying officers, in placing a lock upon the premises of the landlord where the taxpayer's property lay, was an actual taking of the landlord's property is clear, particularly when we bear in mind the fact that at the time of this levy the officers tacked upon the premises a sign reading: "Warning—United States Government Seizure—This property seized for nonpayment of Internal Revenue taxes by virtue of a levy issued by the District Director of Internal Revenue *   *   *" This sign, it should be noted, did not list the property levied on, and was not affixed to the property levied on, but was affixed to the premises of the landlord, and thus to the world denoted a seizure of the landlord's premises.

Both because there was a contract implied in fact between the parties hereto, to pay for the premises used for the storage of the taxpayer's property levied on, and because there was a taking of plaintiff's property without just compensation, the defendant Government is lia-

ble to pay therefor. As to the quantum of such payment, and the effect thereon of the lock placed upon the premises by the taxpayer's receiver in bankruptcy, on top of the locks placed thereon first by the landlord and thereafter by the Government, counsel have agreed that these issues are to be determined subsequent to this determination of liability, as above.

The facts herein stated and the conclusions of law herein expressed shall be considered the findings of fact and conclusions of law required by F.R.Civ.P. 52, 28 U.S.C.A.

An order may be entered accordingly.