COHEN, Trustee of Nathan Bloom, individually and t/a Regent House, Bankrupt *v.* BILLIG et al.

[No. 216, September Term, 1960.]

168

*Decided April 14, 1961.*

The cause was argued before BRUNE, C. J., and PRESCOTT, HORNEY, MARBURY and SYBERT, JJ.

*Irvin S. Friedman* and *Joel H. Pachino,* with whom was *Moses Cohen* on the brief, for appellant.

*Nathan Patz* and *Lawrence A. Kaufman* for appellees.

PRESCOTT, J., delivered the opinion of the Court.

A Trustee in Bankruptcy (Trustee) has appealed from a judgment rendered against him for costs in the Superior Court of Baltimore City, in a suit in which he sought to recover $7,500, which had been paid by Trustee's bankrupt, a tenant, to his landlords as a prepayment of rent under a ten-year lease, which had never been recorded.

On February 5, 1958, Nathan Bloom was adjudicated a bankrupt. Prior thereto, on May 17, 1957, he had entered into a lease with the appellees, City Center Properties, Inc. (Center) and A. J. Billig, who owned adjoining properties. Center leased to him a seven-story hotel property, with equipment and chattels contained therein, and Billig leased to him the second and third stories of his adjacent building. The term of the lease was ten years, accounting from June 1, 1957. The annual rental for the first three years was $30,000, and, for the remaining seven years, $32,500. At the time of its execution, the tenant paid the sum of $7,500, as advance rent for the last four months of the term for Center's property and the last five months and twelve days of the term for Billig's. The bankrupt testified that when he paid this $7,500 and an additional $7,500 for the first three months' rent, he had little, if any, money with which to pay his current bills. The tenant took over the property, but his operation thereof was not successful, financially. On, or about, January 6, 1958, the landlords took possession of the property, as a result of nonpayment of the rent, water bills and other indebtednesses of the tenant; and, as stated above, on February 5th he was adjudicated a bankrupt.

The appellant raises three questions. (1). He contends that the failure to record the lease in accordance with the Code (1957), Article 21, Section 1, rendered the prepayment of rent a voidable preference under § 60 a, a (2), a (7) II,

and § 60 b of the Bankruptcy Act (the Act), as amended (See 11 U. S. C. A. § 96), and the Trustee may recover the same for the benefit of all of the bankrupt's creditors. (2). As his second contention, he asserts that the prepayment of rent was without fair consideration, and, therefore, a fraudulent conveyance under § 67 of the Act (See 11 U. S. C. A. § 107). (3). In the court below, the appellant argued, and submitted a brief, to the effect that the transfer of the $7,500 was void, because of the provisions of § 70 c of the Act (11 U. S. C. A. § 107). He, now, has abandoned this claim, but, in its place (and for the first time), he alleges that it was void under the provisions of § 70 e.

In the jargon of the partridge hunter, the appellant has taken a "flock-shot" at the Bankruptcy Act, hoping the pellets of his argument will reach a sensitive spot, somewhere between the first and last sections thereof, from which he can derive aid and comfort.

## I

It will require more space to state this contention of the appellant than it will to answer it. He argues that the transfer of $7,500 to the appellees in payment of the rent for the end of the ten-year term became a "voidable preference" under § 60 of the Act, by virtue of the failure to record the lease in accordance with the provisions of the Code (1957), Article 21, Section 1.

He acknowledges and concedes that in order for him to prevail in this contention, he must, under § 60 a of the Act, prove all of the six elements set forth therein. For the purposes of this opinion, it is only necessary to mention one of the six; namely, that in order to establish a voidable preference, it is incumbent upon the Trustee to establish that the transfer was "made or suffered by [the] debtor while insolvent." And he likewise concedes that he must also comply with the provision of § 60 b, which requires that the creditor receiving a preference under § 60 a, or his agent, must have "at the time when the transfer is made, reasonable cause to believe that the debtor is insolvent." If his argument ended here, the short and simple answer thereto would

be that there is not a single suggestion in the case, much less evidence, that attempts to show such knowledge on the part of the lessors herein, at the time of the execution of the lease and the payment of the $7,500.

But he goes further and suggests that his proof relating to the transfer having been made while the debtor was insolvent and that the creditor had reasonable cause to believe such insolvency should not be judged as of the time of the actual transfer of the money in dispute, but as of the time "immediately before the filing of the petition" in bankruptcy. He advances this suggestion upon the theory "of a fiction which [he claims] the Bankruptcy Act creates in order to avoid unperfected transfers." He states that § 60 a (2) provides that for the purposes of subdivisions a and b of said section, a transfer of property (other than real property) shall be deemed to have been made at the time, and not until the time, "when it became so far perfected that no subsequent lien upon such property obtainable by legal or equitable proceedings on a simple contract could become superior to the rights of the transferee," and if such transfer be not so perfected prior to the time of the filing of a petition initiating a proceeding in bankruptcy, it shall be deemed to have been made immediately before the filing of the petition. From this point, he argues that the Code (1957), Article 21, Section 1, requires leases of more than seven years' duration to be executed, acknowledged and *recorded;* and, as the lease herein was not recorded, the transfer was not perfected in accordance with said § 60 a (2), and it (the fact that the lease was not recorded) also constituted a failure to comply with "the law applicable to the transfer," which brought into play § 60 a (7) II of the Act, so as to require that the transfer of the $7,500 "shall be deemed to have been made * * * immediately before the filing" of the petition in bankruptcy. It will be unnecessary to state the provisions of this section in any detail, as we shall see later that it has no relevancy to the issue now being considered.

The contention is manifestly based upon a misconception of the meaning of said Section 1 of Article 21, as well as

the provisions of the Bankruptcy Act. The transfer here sought to be avoided is that of the $7,500 for the prepayment of rent,[1] not any portion of the *estate* of the lessors that may have been transferred to the lessee as a result of the lease. Section 1 of Article 21 provides that no "estate above seven years, shall pass or take effect unless the deed conveying the same shall be executed, acknowledged and recorded," but neither it nor any other provision of Maryland law requires the recordation of a lease, in order to effectuate or validate a transfer of the rental payments made thereunder.[2] Moreover, Section 1 explicitly provides that if a lease be executed, it is valid and binding between the original parties thereto, irrespective of whether or not it be acknowledged or recorded. When the sum of $7,500 was delivered by the lessee into the hands of the lessors, the transfer of ownership thereof was, we think, an accomplished and completed act not required to be recorded, and nothing further was necessary to perfect the transfer of said money. Cf. *Tatelbaum v. Chertkof*, 212 Md. 475, 480, 129 A. 2d 680. This being so, it seems obvious that "no subsequent lien" could be obtained by judicial proceedings against the debtor that would "become superior to the rights of the transferee." And, since there was no requirement that the lease be recorded in order to complete the transfer of the title to the rental money, § 60 a (7) II, mentioned above, does not have to be considered.

This whole contention is simply and succinctly answered in 3 *Collier, Bankruptcy* (14th Ed.), at page 875. Under a chapter entitled, "Perfection of Transfer Under § 60 a," the eminent author, after pointing out that for the purposes of § 60 a and b all transfers are not necessarily deemed to have been made at the time when the debtor and his transferee have done what may effect a completed and irrevocable transfer as between themselves, says:

---

1. No question is raised as to this being a security deposit. Tatelbaum v. Chertkof, 212 Md. 475, 129 A. 2d 680.

2. And the appellant makes no claim that the Bankruptcy Act contains any such requirement.

"Certain types of transfers, of course, are perfected as against third parties as soon as they are made, without need for any further step, such as recording. Examples are *a cash payment by a debtor to his creditor,* or an actual delivery of tangible personal property accepted by the creditor in satisfaction or reduction of his debt. Such transfers, under the provision of § 60 a (2), [11 U. S. C. A., sec. 96 a (2)], are 'deemed to have been made' at the time when they were actually made, because they were then perfected as against subsequent liens obtainable by judicial proceedings against the debtor." (Italics supplied.)

Since the transfer of the $7,500, under the provisions of § 60 a (2), must be "deemed to have been made" at the time when it was, in reality, made, and the appellant has failed to show that the lessee was insolvent at that time and that the lessors had reasonable cause to believe that he was insolvent, the appellant's claim of a voidable preference, together with its many ramifications, completely collapses.

## II

The appellant advances this contention with two thrusts, but neither seems to be powered with nuclear propulsion.

§ 67 of the Act, *inter alia,* states:

"* * * Every transfer made * * * by a debtor within one year prior to the filing of a petition initiating a proceeding under this Act by or against him is fraudulent * * * (b) as to then existing creditors and as to other persons who became creditors during the continuance of a business or transaction, if made or incurred without fair consideration by a debtor who is engaged or is about to engage in such business or transaction, for which the property remaining in his hands is an unreasonably small capital, without regard to his actual intent; * * *".

Consideration is defined by the same Section as being fair,

"* * * when, in good faith, in exchange and as a fair equivalent therefor, property is transferred * * *."

The appellant argues that the testimony clearly established that the transfer was made within one year of the petition, that the transfer was made by one about to engage in business, and that the property remaining in the hands of the bankrupt was an unreasonably small capital; hence, if the evidence also proved that the transfer was "made or incurred without fair consideration," he should prevail. He claims that the rental figure of $30,000 was enormous and "fantastic," and this was not the only expense the lessee was required to pay—he was "even required to heat Billig's building in its entirety." Unfortunately for the appellant, the record does not sustain his claim of a lack of fair consideration. Under the lease, the tenant took possession of a seven-story and basement hotel property, located in a favorable section of downtown Baltimore and licensed for hotel, bar and restaurant purposes. It had recently been purchased at public auction, without equipment and furniture, for some $191,000. When taken over by the tenant, the bar and restaurant were equipped and the fifty hotel rooms furnished. In addition to this property, the tenant obtained the use of two floors of the adjoining building. Prior to its occupancy by the bankrupt, the property had been leased by its former owners for an annual rental of $60,000. The only expert testimony upon the subject was that $30,000 was a fair and reasonable annual rent. There was also testimony that disclosed the hotel property and the adjoining building (two stories of which were included in the lease) were heated by a single unit, which accounted for the provision in the lease that the tenant would also heat this building. Upon this evidence, the trial judge concluded that the transfer had been made for a fair consideration, and we agree.

Under this contention, the appellant, again, raises the question of the effect of the failure to record the lease. He says that Section 1, of Article 21, renders the lease "void as to third parties, since until recorded no estate passes or takes

effect." We think this claim is fully answered by what we said under I above, and see no reason for repeating the same.

### III

This question is not properly before us. It was neither presented to, nor decided by, the court below. Maryland Rule 885.

Finding no error, the judgment will be affirmed.

*Judgment affirmed, with costs.*