**MARYLAND NATIONAL BANK**
and
**Francis D. Murnaghan, Jr., Trustees under Deed of Trust from George R. Eisenhauer and Dorothy E. Eisenhauer**

v.

**UNITED STATES of America,**

**Irving Machiz, District Director of Internal Revenue**
and
**Celebrity Lounge, Inc.**

**UNITED STATES of America, Cross-Plaintiff,**

v.

**CELEBRITY LOUNGE, INC., Cross-Defendant.**

**UNITED STATES of America, Defendant and Third-Party Plaintiff,**

v.

**EKLOF & COMPANY, Inc., Third-Party Defendant.**

Civ. A. No. 13747.

United States District Court
D. Maryland.

March 18, 1964.

Thomas P. Perkins, III, Baltimore, Md., for plaintiffs.

Thomas J. Kenney, U. S. Atty., and Robert W. Kernan, Asst. U. S. Atty., Baltimore, Md., and John F. Beggan, Atty., Dept. of Justice, Washington, D. C., for United States.

John E. Sibrea, Baltimore, Md., for third-party defendant.

NORTHROP, District Judge.

This action was instituted by the plaintiffs, Maryland National Bank and Francis D. Murnaghan, Jr., trustees under a deed of trust from George R. Eisenhauer and Dorothy E. Eisenhauer, to recover for rentals allegedly due the plaintiffs from the United States. The United States has filed: a counterclaim against the plaintiffs; a cross claim against Celebrity Lounge, Inc. (hereafter referred to as the taxpayer); and a third-party complaint against Eklof and Company, Inc. (hereafter referred to as Eklof).

After hearing argument of counsel and after consideration of the applicable authorities, this court finds that the plaintiffs should prevail in the original cause of action for unpaid rent, and should likewise prevail in the counter-

claim brought against it by the United States. The United States must prevail in its cross claim against the taxpayer and in its third-party action against Eklof.

## FACTS

By lease dated December 8, 1955, between plaintiffs, as lessors, and Cy Bloom, Margaret Tkac and Benjamin Bart, on behalf of the taxpayer, as lessee, plaintiffs leased to the taxpayer for five years, a portion of the premises known as 19–21 East North Avenue, Baltimore, Maryland.

The lease contained a clause whereby the taxpayer covenanted and agreed to pay the plaintiffs the sum of $3,450.00 representing rental under the Lease Agreement for the months of October, November, and December, 1960. Shortly after execution of the lease, the $3,450.00 was paid to the plaintiffs.

In March of 1960, some nine months before the expiration of the original lease, a Lease Extension Agreement was executed by which the covenants and conditions of the original lease were extended for an additional term to expire on March 31, 1965. The $3,450.00 paid in regard to the original lease was applied as a prepayment of rent for the months of January, February, and March, 1965, under the Lease Extension Agreement.

The taxpayer became indebted to the United States for excise, withholding and FICA taxes for the various quarters from 1956 to 1959 in the total amount of $27,787.60 plus interest. The taxes involved were assessed on September 19, 1957, and notice of a tax lien was filed on March 7, 1960. On January 3, 1962, the assets of the taxpayer on the North Avenue premises were seized by the Internal Revenue Service. The premises were padlocked and notices of the government seizure placed on the outside of the building. Additional notice of the seizure was duly mailed to the taxpayer and notice of a tax deficiency sale was duly published.

By letter of January 12, 1962, the plaintiffs, in response to a request by Salvatore A. Mancini, a Senior Revenue Officer for the Maryland District, Internal Revenue Service, for a quotation of rent for the premises for the period January 3, 1962, to January 24, 1962, submitted the amount of $718.43 as fair rental value. This amount was paid by the United States.

Sealed bids for the personal property of the taxpayer were opened on January 24, 1962. Eklof, the successful bidder, in accordance with the terms of the sales contract, made a down payment on the purchase price, the government to retain possession of the property until the settlement date, when the remainder of the purchase price would be paid. On February 8, 1962, the balance due from Eklof was paid and the government released the property and abandoned the premises.

## ORIGINAL ACTION

Invoking the court's jurisdiction under the Tucker Act [Title 28 United States Code § 1346(a) (2)],[1] the plaintiffs claim that the United States is obligated to them for the fair rental value of the premises for the period January 24, 1962, through February 8, 1962.

The plaintiffs claim alternatively that they should succeed on the basis of express contract, implied contract or a taking of property without due process of law, in violation of the fifth amendment to the Constitution.

1. "(a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

\* \* \* \* \* \* \*

"(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."

Plaintiffs claim that they informed the District Director that they would hold the United States accountable for any rent for the premises which accrued while the government occupied them. The plaintiffs argue that this statement, coupled with the action of the United States in retaining control of the premises formed an express unilateral contract. The evidence does not, as a whole, substantiate the existence of an acceptance by the government of this offer. It is unnecessary to consider the question of existence of an express contract any further, since the court finds plaintiffs' other arguments more persuasive and compelling in their own right.

The plaintiffs' second argument is that the facts substantiate the existence of an implied contract to pay the rent for the period in issue.

■ It is necessary, for Tucker Act jurisdiction to apply to implied contracts, that the contract be implied in fact rather than be quasi contract or contract implied in law. United States v. Minnesota Mut. Inv. Co., 271 U.S. 212, 46 S.Ct. 501, 70 L.Ed. 911 (1926); Merritt v. United States, 267 U.S. 338, 45 S.Ct. 278, 69 L.Ed. 643 (1925); Baltimore and Ohio R. Co. v. United States, 261 U.S. 592, 43 S.Ct. 425, 67 L.Ed. 816 (1923); Alliance Assurance Co., Ltd. v. United States, 252 F.2d 529 (2 Cir. 1958); Baltimore Mail S. S. Co. v. United States, 76 F.2d 582 (4 Cir.), cert. denied, 296 U.S. 595, 56 S.Ct. 111, 80 L.Ed. 421 (1935). The distinction between these two concepts is accurately set forth as follows:

"The expression 'implied contract' has given rise to great confusion in the law * * *. Some of these rights [enforced by contractual actions], however, were created, not by any promise or mutual assent of the parties, but were imposed by law on the defendant irrespective of, and sometimes in violation of, his intention. Such obligations were called implied contracts. Another name is that now generally in use of 'quasi contracts'. This expression makes clear that the obligations in question are not true contracts, and it also avoids confusion with another class of obligations which have also been called implied contracts. This latter class consists of obligations arising from mutual agreement and intent to promise but where the agreement and promise have not been expressed in words. Such transactions are true contracts and have sometimes been called contracts implied in fact." 1 Williston, Contracts, § 3 (3d Ed. 1957) [Footnotes omitted.]

The principal question then is whether the parties intended to obligate themselves. If this was not the case any contract would have to be implied in law.

■ It is clear from the evidence that the plaintiffs did not dispute the government's seizure of the premises. But, they did make it known that they would look to the United States for any unpaid rent which accrued while the property was under government control. The intent on the part of the plaintiffs to obligate the premises and to place an obligation on the government is clear. The government, on the other hand, disavows that it intended to obligate itself for the rent. Rather, it says that it made it known to the plaintiffs that the successful bidder on the personal property of the taxpayer was, pursuant to the regulations [26 C.F.R. § 301.6335(7) (1961)], liable for the expenses incurred in keeping the property, between the time of the acceptance of the bid and final settlement. The above regulation applies to the relationship between the government and the successful bidder. It does not give a contractual right to the property owner to proceed against the successful bidder.

■ The intent of the government to obligate itself may be implied from

**508**

other provisions of the regulations.[2] Feldwin Realty Co. v. United States, 169 F.Supp. 73 (D.N.J.1959) commented upon in 9 Mertens, Law of Federal Income Taxation, § 49.191 (1963 Supp.). These regulations provide that the United States shall pay for the expenses of the levy from the proceeds of the sale. Certainly, rentals for storage space for property seized is a bona fide expense of the levy.

The court therefore finds an intent on the part of both parties to obligate themselves, and a contractual relationship, implied in fact, between them.

■ It is apparent that even had the argument of implied-in-fact contract failed, a further ground for recovery under the Tucker Act, namely a taking of property without due process of law in violation of the fifth amendment to the Constitution, avails itself to the plaintiffs. As was said by Mr. Justice Frankfurter in United States v. Dickinson, 331 U.S. 745, 748, 67 S.Ct. 1382, 1384, 91 L.Ed. 1789, 1793 (1947):

> "But whether the theory of these suits be that there was a taking under the Fifth Amendment, and that therefore the Tucker Act may be invoked because it is a claim founded upon the Constitution, or that there was an implied promise by the Government to pay for it, is immaterial. In either event, the claim traces back to the prohibition of the Fifth Amendment, 'nor shall private property be taken for public use, without just compensation.'"

The United States argues that no taking of property existed here and that no demand was made upon it to release the premises. The Dickinson case, 331 U.S.

at page 748, 67 S.Ct. at page 1385, 91 L.Ed. 1789, said:

> "Property is taken in the constitutional sense when inroads are made upon an owner's use of it to an extent that, as between private parties, a servitude has been acquired either by agreement or in course of time."

The government put its lock on the premises and placed notices on the outer walls telling of the seizure. These facts convince the court that a taking took place [see Feldwin Realty Co. v. United States, supra, 169 F.Supp. p. 77], notwithstanding the lack of demand by the plaintiffs to vacate or the possibility that the government would have vacated upon request.

### UNITED STATES v. EKLOF

The United States has filed a third-party claim against Eklof, seeking indemnity, should the United States be found liable to the plaintiffs for rental of the premises. The plaintiffs having prevailed, and Eklof having admitted liability, the third-party action can be settled as a matter of course. Should Eklof not have admitted liability, 26 C.F.R. § 301.6335(7) (1961) specifically sets forth the liability of the successful bidder for expenses incurred by the United States in protecting the property purchased between the time the bid is accepted and the property is released to the successful bidder.

### COUNTERCLAIM BY THE UNITED STATES

The United States seeks to recover the $3,450.00 paid to the plaintiffs by the taxpayer. It is conceded by the government that the $3,450.00 was prepaid rent on the last three months of the orig-

---

2. 26 C.F.R. § 301.6341-1 "Expense of levy and sale.

"The district director shall determine the expenses to be allowed in all cases of levy and sale. Such expenses shall include the expenses of protection and preservation of the property during the period subsequent to the levy, as well as the actual expenses incurred in connection with the sale thereof."

26 C.F.R. § 301.6342 "Statutory provisions; application of proceeds of levy.

"(a) *Collection of liability.* Any money realized by proceedings under this subchapter (whether by seizure, by surrender under section 6332, or by sale of seized property) shall be applied as follows:

"(1) *Expense of levy and sale.* First, against the expenses of the proceedings under this subchapter; * * * *."

inal lease period and later on the last three months of the lease extension period, and not a security deposit.

The government argues that the federal tax lien attached to the property of the taxpayer, including the prepaid rent held by the plaintiffs prior to the time ownership of the fund vested in the plaintiffs, and, therefore, the United States is entitled to the fund. The federal tax liens arose at the time of the assessment against the taxpayer in September, 1959, and attached by operation of law to all property of the taxpayer held by it at that time, 26 U.S.C.A. § 6322 (1955). The decisive question is whether at the time of the assessment the prepaid rent was the property of the taxpayer-tenant or the plaintiff-landlord.

It is the government's position that the prepaid rent could have become the property of the plaintiffs either when the period to which the rent was applicable came about, or when the lease was terminated due to the default of the tenant. It relies on Sline Properties, Inc. v. Colvin, 190 F.2d 401 (4 Cir. 1951) and a Connecticut case set forth therein. It follows, claims the government, that since the assessment predated both these events, the $3,450.00 remained the property of the taxpayer and thereby accrues to the government, by default. This reasoning is not persuasive. The Sline case was decided prior to definitive decisions by the Court of Appeals of Maryland on this matter and the opinion does not concern itself with the Maryland cases which are apposite today.

■ It has long been settled by the United States Supreme Court that the federal courts must look to the state law, wherein the property of the taxpayer is located, to determine whether or not a taxpayer has any property or rights to property under the state law. The Court said:

"The threshold question in this case, as in all cases where the Federal Government asserts its tax lien, is whether and to what extent the taxpayer had 'property' or 'rights to property' to which the tax lien could attach. In answering that question, both federal and state courts must look to state law, for it has long been the rule that 'in the application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer had in the property * * * sought to be reached by the statute.'" Aquilino v. United States, 363 U.S. 509, 512–513, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365, 1368 (1960).

See also United States v. Bess, 357 U.S. 51, 55, 78 S.Ct. 1054, 1057, 2 L.Ed.2d 1135, 1141 (1958) and Morgan v. Commissioner of Int. Rev., 309 U.S. 78, 82, 60 S.Ct. 424, 426, 84 L.Ed. 585, 589 (1940).

■ The Maryland cases, decided since the Sline decision state unequivocally that a prepaid rental payment becomes the property of the landlord at the time it is paid. The Maryland Court of Appeals has said:

"When the sum of $7,500 was delivered by the lessee into the hands of the lessors, the transfer of ownership thereof was, we think, an accomplished and completed act * * * and nothing further was necessary to perfect the transfer of said money * * *. This being so, it seems obvious that 'no subsequent lien' could be obtained by judicial proceedings against the debtor that would 'become superior to the rights of the transferee.'" Cohen, Tr. of Bloom v. Billig, 225 Md. 167, 172, 169 A.2d 389, 392 (1960).

Earlier, Judge Prescott of the same court had reason to say:

"Accordingly, the rent herein involved, although paid for a portion of the term four and one-half years in the future, was accrued, and became the property of the landlords, on the day it was paid." Lochner, R'cvr v. Martin, 218 Md. 519, 524, 147 A.2d 749, 752 (1959).

■ Therefore, this court finds that the prepaid rental payment became the property of the plaintiffs at the time it was tendered, and not on the date of default by the taxpayer. Since the payment of the $3,450.00 occurred before the tax assessment levied against the taxpayer, the $3,450.00 had passed to the plaintiffs, and was no longer the taxpayer's property subject to levy by the government.

## UNITED STATES
### v.
## CELEBRITY LOUNGE, INC.

■ The United States has filed a cross claim against the taxpayer for unpaid taxes in the amount of $17,239.99 plus unassessed interest as provided by law. The taxpayer has chosen not to present a defense to this claim, and, accordingly, a default judgment will be entered.

\* \* \*

The facts herein stated and the conclusions of law herein expressed shall be considered the findings of fact and conclusions of law required by Rule 52, F.R.Civ.P., 28 U.S.C.A.

Orders may be entered accordingly.