**AMERICAN OIL COMPANY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 72-C-278.**

United States District Court,
N. D. Oklahoma.

June 27, 1974.

Bill V. Wilkinson, of Rucker, Tabor, McBride & Hopkins, Tulsa, Okl., for plaintiff.

Nathan G. Graham, U. S. Atty., Tulsa, Okl., Robert E. Noel, Tax Div., Dept. of Justice, Washington D. C., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BARROW, Chief Judge.

The following constitutes a brief summary of the contentions raised by the parties in the pleadings on file in the instant litigation.

This action was instituted by plaintiff to recover certain sums from the defendant for an alleged unlawful seizure of its service station leased to one James D. Aman.

Plaintiff contends that the Internal Revenue Service seized the premises owned by plaintiff and leased to James D. Aman, which constituted an inverse condemnation in violation of the Fifth Amendment to the Constitution, inasmuch as no just compensation was paid to plaintiff. Plaintiff maintains that the service station was continuously closed from the 23rd day of November, 1971, until the 2nd day of December, 1971. Plaintiff contends that such action by the Internal Revenue Service caused the plaintiff a loss of use of the premises for a 10 day period at a cost of $50.00 per day. Plaintiff further contends that because of the abrupt and forceful padlocking of the service station, plaintiff suffered injury to its reputation and said loss at present and expected to continue in the future amounts to $2,000.00. Plaintiff alleges that because of the unlawful seizure action by the Internal Revenue Service, plaintiff paid, under protest, the sum of $1,850.02 to the Internal Revenue Service, representing sums allegedly due and owing from James D. Aman. A further contention of the plaintiff is that in negotiating with the Internal Revenue Service it was agreed that upon payment by plaintiff of the amount due from James D. Aman, the premises would be returned to plaintiff. Plaintiff maintains that upon payment by it of the

sum due said service station was not returned to plaintiff, but was in fact returned to James D. Aman and that the Internal Revenue Service, at the time of such surrender, had knowledge that James D. Aman was no longer the lessee of said service station. Plaintiff alleges that this constituted a breach of its agreement with the Internal Revenue Service. Plaintiff alleges jurisdiction under Section 7426 of the Internal Revenue Code of 1954. Although not mentioned in its complaint, the plaintiff, in its brief in opposition to a motion to dismiss filed by the United States, raises the issue that the causes of action in plaintiff's complaint additionally fall within the scope of 28 U.S.C.A. Section 1346(a)(2), commonly called the Tucker Act. Additionally, plaintiff seeks an attorney fee in the sum of $3,000.00 and costs of the action.

In its answer the defendant maintains that the Court does not have jurisdiction under Title 28 U.S.C.A. Section 1346 or Section 7426 of the Internal Revenue Code of 1954. Defendant admits that it did seize the Standard Service Station on or about November 23, 1971, in an effort to collect unpaid tax liabilities of James D. Aman, but denies that such seizure was unlawful. Defendant admits that it knew prior to the seizure that James D. Aman had a leasehold interest in the service station and that plaintiff paid the tax liability, after seizure, of James D. Aman, and, additionally admits that upon such payment it surrendered the service station here involved to James D. Aman and not to plaintiff.

Pre-trial Order was duly filed and the case was set down for non-jury trial.

The instant litigation came on for non-jury trial on June 17, 1974. Plaintiff appeared by its attorney, Donald Hopkins, and defendant appeared by its attorney, Robert E. Noel. The Court proceeded to hear argument, testimony and evidence was introduced as exhibits. When both sides rested, the Court took the case under advisement.

## FINDINGS OF FACT

Based upon the non-jury trial, the pleadings, and all matters before the Court, the Court makes the following Findings of Fact.

1. On November 23, 1971, the plaintiff, American Oil Company, was the owner of a certain Standard Service Station located at the southwest corner of the intersection of 41st Street and South Yale Avenue, Tulsa, Tulsa County, Oklahoma.

2. By lease dated June 6, 1969, the plaintiff, American Oil Company, leased said Standard Service Station to one James D. Aman, for a term commencing January 7, 1969, and ending January 6, 1970, with subsequent successive terms of one year each.

3. On December 30, 1968, James Dan Aman entered into a Security Agreement-Chattel Mortgage with The American Oil Company. (Pl.Ex. 6).

4. On November 23, 1971, James D. Aman was in possession, by virtue of said lease, of the aforesaid Standard Service Station.

5. The lease of January 6, 1969, contained the following provision (Pl.Ex. 7):

"If Lessee ceases operation of the service station on the demised premises for a period of more than forty-eight (48) continuous hours, without first obtaining the written consent of Lessor, Lessor shall thereupon have the right to cancel this lease without notice."

6. On November 23, 1971, James D. Aman, the taxpayer, was indebted to the United States in the sum of $1,850.02 by virtue of unpaid federal taxes due the United States from James D. Aman.

7. On November 23, 1971, the Internal Revenue Service levied upon and seized the Standard Service Station and its contents in an effort to collect the unpaid tax liabilities of James D. Aman.

8. At the time of the levy, on November 23, 1971, the Internal Revenue Service, through Revenue Officer James

McClean, knew that James D. Aman, the taxpayer, had a leasehold interest in the realty and building constituting the Standard Service Station.

9. Following the seizure of the Standard Service Station on November 23, 1971, Revenue Officer McClean caused the locks upon said station to be changed and posted upon said premises a Publication 34 (Def.Ex. 1)—a warning notice that the property to which the notice was attached had been seized by the Internal Revenue Service of the United States for unpaid taxes.

10. At the time of the seizure, said building and premises of the Standard Service Station contained various tires, batteries and accessories as well as gasoline, credit card receipts, and miscellaneous equipment. The Revenue Agent assumed and/or believed the above mentioned items were within the service station but was unaware of any specific ownership vesting with James D. Aman.

11. From the time of the seizure on November 23, 1971, the Standard Service Station remained closed until December 2, 1971, at which time American Oil Company delivered its check No. 967593 (Pl.Ex. 5) in the amount of $1,850.02 to the Internal Revenue Service to pay in full the tax claims owed by James D. Aman giving rise to the levy of November 23, 1971.

12. Delivery of this check No. 967593 in the amount of $1,850.02 to the Internal Revenue Service was accomplished by forwarding it to the Internal Revenue Service with a cover letter dated December 2, 1971 (Pl.Ex. 4), from Stanley Marshall, then Credit and Accounts Manager, Standard Oil Division, American Oil Company. The following is a direct quote of the contents of said letter.

"In line with my conversation with Mr. Jones of your Office, I am attaching our check # 967593 for $1850.02 to pay the taxes owed your office by James D. Aman. You will note this payment is being made under protest as we still question the legality on your part in locking up our Company owned service station located at 41st and Yale in Tulsa. It is our intent to further research this procedure and if conditions warrant to secure a court's decision through litigation, if necessary.

"By making this payment, we have been assured by Mr. Jones that you will release this station and its contents to our Company representative this date. Mr. Jones also agreed to furnish me a receipt acknowledging payment of Mr. Aman's tax lien. Please forward this receipt to my personal attention at the above address."

13. Both Mr. Jones and Mr. Marshall testified that they recalled having a telephone conversation with regard to the seizure by the Internal Revenue Service of the Standard Service Station. Mr. Jones testified, however, that, though he could not recall the particulars of the conversation, he would not have made an agreement to release the station to representatives of American Oil Company as asserted in the letter because the applicable provisions of the Internal Revenue Service Manual direct that under normal circumstances property being released from levy was to be released to the taxpayer or the person from whom the property was seized. Mr. Marshall testified that he recalled the conversation and that the conversation was as set out in his letter of December 2, 1971. He further testified that he would not have forwarded his company's check in the amount of $1,850.02 to Mr. McClean had such an agreement not been reached.

14. On December 2, 1971, following the receipt of the American Oil Company's check in the amount of $1,850.02, the Standard Service Station was released from levy by Revenue Officer McClean, who surrendered possession of the Standard Station to James D. Aman by delivering to him the keys for said station.

## CONCLUSIONS OF LAW

Based on the foregoing Findings of Fact, the Court makes the following Conclusions of Law.

1. The Court has jurisdiction and venue of the parties and subject matter pursuant to the provisions of Title 28 U.S.C.A. Section 1346.

2. Section 6321 of the Internal Revenue Code of 1954 grants the United States a lien on all property or rights to property of a delinquent taxpayer for the amount of the unpaid tax assessments which lien may be enforced against the taxpayer's property or rights to property by levy, seizure and sale by the United States. Section 6331 of the Internal Revenue Code of 1954 as amended.

3. To protect the rights of property owners whose property rights are unfairly injured by the levy or sale of the property of others, Congress enacted Title 26 U.S.C.A. Section 7426, Civil Actions by Persons Other than Taxpayers. This Section gives the District Court jurisdiction "to grant only such of the following forms of relief as may be appropriate in the circumstances". Section (2) of this Act lists three remedies which may be granted, all predicated on the condition that "the court determines that such property has been wrongfully levied upon". The only one of the three that appears might be applicable to the facts of this case is "(B) grant a judgment for the amount of money levied upon". In the instant litigation the levy was against the service station and its contents.

4. Under 26 U.S.C.A. Section 7426, no action by the non-taxpayer can lie unless the levy or sale has been wrongful. Crow v. Wyoming Timber Products Co. (10th CCA, 1970) 424 F.2d 93.

5. The legislative history of this Act elucidates the meaning of "wrongful".

"The bill makes provision for three new types of actions all of which may be brought only in Federal district courts. First, where a person claims the Government wrongfully levied upon his property to satisfy the tax liability of another, the bill provides that he may bring suit against the Government. *'Wrongful', as used here, refers to a proceeding against property which is not the taxpayer's.* A person may bring suit under this provision once a levy is made." (Emphasis supplied) U.S.Code Congressional and Administrative News, 1966, p. 3751.

6. This Senate Report is further cited by the Court in Western Pennsylvania National Bank v. U. S. (W.D.Pa., 1973) 354 F.Supp. 373, wherein the Court said:

" 'Any relief under this provision is conditioned on a finding that the property levied upon did *not* belong to the taxpayer'. Such language indicates to the court that the Congress did *not* intend to confer jurisdiction on a Federal District Court to grant injunctive relief when the plaintiff is claiming a security interest in the taxpayer's property but only where the property in question belongs to a third party. *The Report seems to make clear that a levy can only be wrongful if it is on property which is not the taxpayer's.*" (Emphasis supplied)

7. A leasehold is *not* property or rights to property included in the exemptions enumerated under Federal Tax Regulations, 1969, Section 301.6334–1(a). Section (c) of the same regulation makes it clear that "(n)o other property or rights to property are exempt from levy except the property specifically exempted by section 6334(a)".

8. Although American Oil Company's security interest does take precedence over the interest of the Internal Revenue Service, this fact does not in and of itself support suit. Farmers-Peoples Bank v. United States (D.C. Tenn., 1972) 72–1–USTC, paragraph 9315, mod. and remanded on another issue (6th CCA) 477 F.2d 752.

9. This superior interest could support an injunction to prevent the sale of the property levied upon, but could not inhibit the Internal Revenue Service

from levying on the property originally. Therefore, the notice of filing of a security interest by American Oil Company is not a factor in determining the wrongfulness of the taking since the Internal Revenue Service levied upon the leasehold in accordance with Federal Tax Regulations, 1969, Section 301.-6331–1, Levy and Distraint, which provides:

"Levying may be made by serving notice of levy on any person in possession of, or obligated with respect to, property or rights to property subject to levy * * *."

10. The Court concludes, as a matter of law, that since there was no wrongful taking, plaintiff is not entitled to recover the sum paid, to-wit; $1,850.02 to the Internal Revenue Service under the provisions of Title 26 U.S.C.A. Section 7426.

11. With respect to rents, the Court in the case of Feldwin Realty Co. v. U. S. (D.N.J., 1959) 169 F.Supp. 73 cited I.R.S. Regulation 5332(2) as follows:

"When the property seized is located in rented premises and consists of machinery or other heavy articles not easily transported, or is made up of a considerable quantity of business assets, arrangements should be made with the landlord for storage of the property on the premises * * *. If such permission cannot be secured, a reasonable charge for storage should be arranged with the property owner. This charge should be based only upon the number of days of actual occupancy under the seizure * * *."

See also Smith v. United States (9th CCA, 1972) 458 F.2d 1231, wherein the Court said:

"From the outset, the government was fully aware that the Smiths insisted upon either possession of the premises or rental for their use. '(I)f the United States occupies a person's premises, it is, ordinarily, liable for the rental value thereof even though it occupies them against the will of the owner and without an intention on the part of the United States to pay rent."

12. Based on the cases cited above in Conclusion Number 11, the Court finds that the United States should reimburse American Oil Company not only for the period of actual occupancy by the Internal Revenue Service, but also for the two week period before Aman's eviction. Therefore, the period for which recovery is granted will be the three week period during which the American Oil Company was deprived of its property, i. e., November 23, 1971 to mid-December, 1971. The rate of rent is computed as follows: The average monthly rent for September, October and November was $496.63. The daily rate of rental would then be $17.74 per day. The total rent due plaintiff from the United States for the 24 day period would be $425.76.

13. The only evidence adduced at the trial was with reference to the tires. No evidence was adduced as to profits with reference to accessories and, therefore, the Court will make no determination as to profits as to accessories. The evidence indicated that approximately 500 tires were sold per year or 42 tires per month. Assuming that approximately 34 tires would have been sold during the 24 day period that plaintiff was deprived of possession of its property, with a 20% mark-up ($6.00 per tire), the profit lost on the sale of tires would be $204.00.

14. Title 28 U.S.C.A. Section 2412 provides:

"Except as otherwise specifically provided by statute, a judgment for costs, as enumerated in section 1920 of this title but *not including the fees and expenses of attorneys* may be awarded to the prevailing party in any civil action brought by or against the United States or any agency or official of the United States acting in his official capacity, in any court having jurisdiction of such action. A judgment for costs when taxed against the Government shall, in an amount established

by statute or court rule or order, be limited to reimbursing in whole or in part the prevailing party for the costs incurred by him in the litigation. Payment of a judgment for costs shall be provided in Section 2414 and Section 2517 of this title for the payment of judgments against the United States." (Emphasis supplied.)